City of Pittsburgh, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued March 6, 1979, before President Judge
Bowman and Judges Crumlish, Jr., Wilkinson, Jr.,
Mencer, Rogers, Craig and MacPhail. Judges Blatt
and DiSalle did not participate.

*Marvin A. Fein,* Utilities Counsel, with him *Mead
J. Mulvihill, Jr.,* City Solicitor, for petitioner.

*Joseph J. Malatesta, Jr.,* Assistant Counsel, with
him *Daniel F. Joella,* Deputy Chief Counsel, and
*Kathleen Herzog Larkin,* Chief Counsel, for respondent.

*Charles E. Thomas,* with him *Steven A. McClaren,*
and *Thomas & Thomas,* for intervenor.

Opinion by Judge Wilkinson, Jr., April 24, 1979:
As a result of the lengthy United Mine Workers
strike which started on December 6, 1977 intervenor,

Duquesne Light Company (Duquesne) sought by petition filed with the Public Utility Commission (Commission) on February 6, 1978 permission to file a tariff supplement, effective on one day's notice, establishing an "emergency surcharge" in the amount of $.003 per kilowatt hour. Duquesne averred that the coal shortage resulting from the strike had forced it to make extraordinary purchases of power from other utilities to supplement a diminished generating capacity. Duquesne further averred that because of the high cost of purchased power, averaging three times the cost of self-generated power, the surcharge was needed to enable the utility to maintain proper service to the public.

Evidentiary hearings were held on February 14 and 17, 1978 at which only Duquesne presented affirmative evidence, the participation of all other interested parties being limited to cross-examination of Duquesne's witnesses.

By order adopted March 1, 1978 and entered March 2, 1978 the Commission granted, except in aspects not material here, Duquesne's request for an emergency surcharge. It is from that order that Petitioner now seeks review.[1] We affirm the Commission.

Petitioner argues that the Commission's allowance of an emergency surcharge to a utility, while that utility has a request for an increase in its rate base pending, cannot be sustained as a matter of law. In support of this proposition Petitioner cites the case of *Pittsburgh v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 391, 90 A.2d 850 (1952).

---

[1] Duquesne has filed a motion to quash, contending the order was interlocutory. While the matter is not free from doubt, because of the extraordinary situation presented by the facts of this case, we will dismiss the motion to quash and dispose on the merits.

A careful reading of the opinion in that case reveals its inapplicability. There the facts show Commission action approving a tariff while an earlier tariff covering the same subject was pending and under investigation. The infirmity perceived by the Superior Court was the use of a procedure which allowed a tariff to supersede and cancel a pending tariff, effectively nullifying a protestant's right to challenge the initial rate request.

The situation presented by this case is quite different. The emergency surcharge sought here simply had no bearing on the rate request at Rate Investigation Docket No. 373 (R.I.D. 373), filed October 1, 1976 still pending at the time the Commission approved Duquesne's request for a surcharge. Had the Commission granted everything requested by the utility in R.I.D. 373 that fact would in no way have diminished the need for emergency relief, the surcharge and rate base proceedings represented separate and distinct needs of the utility.

An important distinction must be drawn between the traditional utility rate proceeding and Duquesne's petition in this case. In the former, it is the Commission's duty to insure that "[a] public utility in this Commonwealth . . . receive a fair return on the fair value of its property used and useful in the public service at the time the rates are established or at the time value is in issue." *Citizens Water Co. v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 301, 306, 124 A.2d 123, 125 (1956).

Although based on "test year" data concerning operating conditions, there exists a very definite forward looking aspect in the rate making process. "In forecasting probable future revenues under a given tariff, the Commission must necessarily have the power to exercise its own judgment 'upon a view of all the relevant circumstances.'" (Citations omitted.)

*Pittsburgh v. Pennsylvania Public Utility Commission,* 168 Pa. Superior Ct. 95, 106, 78 A.2d 35, 40 (1951).

To fill the obvious value and need for some measure of predictability and semi-permanence in this area, "[t]he object of test year figures is to reflect *typical conditions."* (Emphasis added.) *Pittsburgh v. Pennsylvania Public Utility Commission,* 187 Pa. Superior Ct. 341, 361, 144 A.2d 648, 659 (1958) (allocatur refused). Thus it is apparent that Duquesne neither desired nor would have been permitted to recover the unusual costs of purchased power by means of the traditional rate making process. For Duquesne the primary effect of the coal strike was the extraordinary need to purchase power from other utilities, and it was from this single, specific, and unusual circumstance that Duquesne sought relief.

Statutory authority for the Commission's unusual action is found in Section 308(a) of the Public Utility Law (Law), Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §1148(a)[2] which provides in pertinent part:

> (a) Unless the commission otherwise orders, no public utility shall make any change in any existing and duly established rate, except after sixty days' notice to the commission. ... *The commission, for good cause shown, may allow changes in rates, without requiring the sixty days' notice, under such conditions as it may prescribe.* (Emphasis added.)

Case law support for the invocation of Section 308 (a) in this situation may be found in Judge BLATT's opinion for the Court in *City of Erie v. Pennsylvania Electric Co.,* 34 Pa. Commonwealth Ct. 326, 383 A.2d

---

[2] This statutory provision may now be found, without material change, at Section 1308(a) of the Public Utility Code, 66 Pa. C.S. §1308(a).

575 (1978). In that case the City of Erie challenged a Commission order allowing Pennsylvania Electric Company to collect from its customers a state tax surcharge for the purpose of recovering a portion of the tax increases imposed in the latter part of 1969 and early 1970. The Commission explained that its action was necessary because the time required to review some 600 individual rate increase requests would result in " 'serious deterioration of service to the public.' " *Id.* at 328, 383 A.2d at 576.

Because the rationale is equally applicable to the facts of the present case we will quote at some length from Judge BLATT's opinion:

A public utility is clearly entitled to a fair rate of return on its investment, as determined by the PUC's consideration of many factors, including the costs of operating its facilities . . . and the amount of taxes paid by a utility must be considered as a legitimate operating expense. . . . Under the Law, we have also previously recognized that the PUC has been given broad discretion to permit proposed rates to become effective or to suspend them with or without hearing. . . . In addition, Section 308(a) . . . provides that the 'commission, for good cause shown, may allow changes in rates, without requiring the sixty days' notice, *under such conditions as it may prescribe*' (emphasis added.) Recognizing that it could not feasibly consider individual rate requests in sufficient time to avoid a reduction in the fair rate of return to many utilities, the PUC ordered the implementation of a state tax adjustment procedure, and we believe that the Law provides it with the implied authority to take such action. (Citations omitted.)

*Id.* at 330-31, 383 A.2d at 577.

The language in the Commission's order in the instant case is significant in this regard where it stated:

There can be no question that all parties to this proceeding . . . have been required to proceed with great haste so that at least an initial resolution of Duquesne's Petition could be had at the earliest possible date. . . . Nevertheless, after a thorough review of the evidence and the law applicable thereto, we are satisfied that Duquesne has proved both a need for and an entitlement to an emergency surcharge.

Petitioner also challenges the sufficiency of the Commission's findings. The governing statutory provision, Section 1005 of the Law, 66 P.S. §1395 requires[3] the Commission to make findings "sufficient [in] detail to enable the court on appeal, to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence." The Superior Court recognized in *Johnstown v. Pennsylvania Public Utility Commission,* 184 Pa. Superior Ct. 56, 133 A.2d 246 (1957) that the content and extent of the Commission's findings must necessarily depend upon the kind of proceeding involved and the relief being sought.

In this case Duquesne averred a need for a particular type of relief as a result of specific effects of the coal strike. We have carefully reviewed the record and are satisfied that in the circumstances of this case the findings made by the Commission are adequate for purposes of our review. Further, Duquesne presented abundant evidence through testimony and exhibits demonstrating the specific repercussions of the strike and the resultant need for emergency relief.

---

[3] This statutory provision may now be found, without material change, at Section 703(e) of the Public Utility Code, 66 Pa. C.S. §703(e).

Accordingly, we will enter the following

ORDER

AND Now, April 24, 1979, the order of the Pennsylvania Public Utility Commission at Docket No. R-78010548 adopted March 1, 1978 and entered March 2, 1978 is hereby affirmed and the City of Pittsburgh's Petition for Review and Duquesne Light Company's Motion to Quash are dismissed.

Judge CRAIG concurs in the result only.