493 A.2d 653

**David M. BARASCH, Consumer Advocate**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Petitioner-Appellant,**

**UGI Corporation—Gas Utility Division, Intervenor.**

**David M. BARASCH, Consumer Advocate**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION,**

**UGI Corporation—Gas Utility Division, Intervenor-Appellant.**

Supreme Court of Pennsylvania.

Argued March 7, 1985.

Decided June 4, 1985.

562

Frank B. Wilmarth, Albert W. Johnson, III, Charles F. Hoffman, Harrisburg, for appellant at No. 37.

Robert H. Young, Kenneth R. Myers, Philadelphia, for appellant at No. 38.

Philip F. McClelland, Harrisburg, for Consumer Advocate.

Kenneth R. Myers, Philadelphia, for UGI Corp.-Gas Utility Div.

David M. Kleppinger, Harrisburg, for PPG Industries, Inc.

Bernard A. Ryan, Jr., Harrisburg, for Bethlehem Steel Corp.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

In this rate case appeal, UGI Corporation—Gas Utility Division (UGI) and the Public Utility Commission (Commission) seek review of an order of the Commonwealth Court which reversed the Commission's approval of UGI's calculation of federal and state income taxes for rate-making purposes. The Commission's ruling permitted UGI to calculate its federal and state income taxes on the basis of a separate return even though UGI did not file a separate return but joined in a tax-saving consolidated return filed by its corporate parent. On appeal, the Commonwealth Court disapproved of the separate-return calculations used by UGI and concluded that tax calculations which fail to account for the tax benefits realized by participation in a consolidated return cannot be sanctioned. We agree, and therefore, affirm.

On March 31, 1982, UGI filed with the Commission, tariff revisions proposing rate increases which would generate an additional $30,719,803 in annual revenues. The commission

initiated an investigation to determine the lawfulness and reasonableness of the proposed rates. The revised rates were suspended by operation of law until December 31, 1982.[1]

The Office of Consumer Advocate (OCA) was one of several parties who filed a complaint challenging the proposed rates.[2] Among the various issues raised in the proceedings, the OCA contested the income tax expenses claimed by UGI.[3] The OCA argued that UGI filed its tax return as part of a consolidated tax group comprised of its parent company and several other subsidiaries.[4] Under this voluntary arrangement, UGI's tax liability was less than it would have been had a separate return been filed. It follows then, the OCA argued, that taxes calculated on the basis of a separate return cannot be allowed and, for rate-making purposes, UGI must be required to figure its tax liability on the basis of the consolidated return actually filed. In considering the income tax issue raised by the OCA, the Commission summarized as follows:

> The Company has developed current and deferred income tax expense totalling $19,433,239 ($16,407,960 Federal and $3,025,279 State) which includes current taxes payable, deferred taxes normalizing liberalized depreciation, and the deferral and amortization of investment tax credits. (UGI Ex. 9, III–A–17(6), revised July 1, 1982.)

> The OCA urges that the requested allowance for state and federal income taxes of $19,433,239 be adjusted by the application of a consolidated effective income tax rate

1. See 66 Pa.C.S.A. § 1308(b).

2. Also filing complaints were Hazelton Taxpayers Association, Bethlehem, Carpenter Technology Corporation, Highspire Borough, Steelton Borough, Penbrook Borough, Lower Paxton Township, Lower Swatara Township, South Hanover Township, Susquehanna Township, Derry Township, Paxtang Borough, PPG Industries, Inc. and Royalton Borough.

3. The income tax expense issue is the only issue raised in the appeal to this Court.

4. At the time in question, there were 2 regulated utility companies and 22 non-utility business corporations in the consolidated UGI corporation.

of 27.77% to the OCA pro forma return on rate base to yield a tax allowance of $10,538,091. (OCA St. 4, Sch. 67, revised). OCA further urges that the tax allowance be reduced by $402,520, to reflect the five year amortization of accumulated deferred state income taxes, and $42,594, which reflects a three year amortization of the difference between accumulated deferred income taxes collected at 48% and those collected at 46%. (OSA St. 4, Sch. 72, revised.) The total OCA allowance for state and federal income taxes would be $10,092,977. (OCA St. 4, Sch. 67, revised.)

Slip opinion, pps. 39, 40.

The Commission dismissed the OCA's arguments saying that only consolidated tax savings that are generated by chronic loss companies [5] should be flowed through to the ratepayers. In this case the Commission found that no chronic loss company was involved in the UGI consolidated return. The Commission held, therefore, that for rate-making purposes, UGI's tax calculations on a separate return basis were reasonable. The Commission approved the income tax expense figure for the test year ending December 31, 1982 at $19,433,239, the sum which was calculated and submitted as if UGI filed a separate return. The Commonwealth Court found that the Commission's conclusion on the tax expense issue violated basic rate-making principles, thus constituting an error of law.[6]

Appellants (UGI and the Commission) argue that the Commonwealth Court exceeded its scope review by substituting its discretion for that of the Commission. Appellants contend that the Commission's ruling on the tax expense issue was within the Commission's discretionary expert judgment and the Commonwealth Court possesses little latitude to interfere with the expertise of the Commission. *See Pennsylvania Power and Light Co., v. Pennsylvania*

5. A chronic loss company is one that sustains losses year after year and is unable to benefit from carry-back or carry-forward provisions of the Internal Revenue Code.

6. *Cohen v. Pennsylvania Public Utility Commission,* 78 Pa.Cmwlth. 545, 468 A.2d 1143 (1983).

*Public Utility Commission,* 10 Pa.Cmwlth. 328, 311 A.2d 151, (1973).

■ The scope of review in Public Utility Commission cases is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or the Commission's findings and conclusions are, or are not, supported by substantial evidence. *Park Towne v. Pennsylvania Public Utility Commission,* 67 Pa.Cmwlth. 285, 289, 433 A.2d 610, 613 (1981); *Carnegie Natural Gas v. Pennsylvania Public Utility Commission,* 61 Pa. Cmwlth. 436, 438, 433 A.2d 938, 940 (1981); 2 Pa.C.S.A. § 704.[7] In the case *sub judice,* the Commonwealth Court found that the Commission's conclusion constituted an error of law.

■ Although the Commission is vested with broad discretion in determining what expenses incurred by a utility may be charged to the ratepayers, the Commission has no authority to permit, in the rate-making process, the inclusion of hypothetical expenses not actually incurred. When it does so, as it did in this case, it is an error of law subject to reversal on appeal.

Next, appellants argue that the Commission's adoption and application of a "chronic loss company" methodology in the calculation of consolidated tax return savings is proper and legitimate regulatory policy and should be approved by the appellate courts. In 1981, the UGI parent corporation operated two utilities and had 22 non-utility subsidiaries. Rapid expansion of the non utility companies generated for these subsidiary entities large tax losses and considerable investment tax credits. It was these losses and credits that

7. 2 Pa.C.S.A. § 704 provides in part as follows: The court shall hear the appeal without a jury on the record certified by the Commonwealth agency. After hearing, the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence....

produced substantial reduction in the taxes due under a consolidated return. The appellants contend that tax losses and investment tax credits of a non utility member of a consolidated tax group do not relate in any way to the business of a utility member for rate-making purposes. Appellants insist that it is only in a situation where a chronic loss tax shelter company is a part of the consolidated group that allocation of non utility tax benefits to a utility member of the group is proper and sustainable. If no chronic loss company is present in the group, appellants argue it would be inconsistent to use those tax benefits to reduce the income tax expense allowance of a utility member without also including, in the rate-making process, consideration of the non utility costs which generated the tax losses and the tax credits. Appellants add, as the Commission held, that it is only where a chronic loss company is involved in the consolidated group that the savings realized by the filing of a consolidated tax return are to be flowed through to the ratepayers.

The appellants' argument fails to recognize the basic rate-making maxim that only expenses which, in fact, are actually paid or payable by the utility may be included for the purposes of rate-making.

> The rates of a utility are to be completed on the basis of providing a fair return on the fair value of its property used and useful in the public service after allowance for proper operating expenses, taxes, depreciation, and any other legitimate item. In computing the cost of operation and service, the Commission considers evidence of the *actual expenses,* properly adjusted when the evidence warrants; there is no legal or equitable reason for a supplemental return *in the guise of allowances for taxes or other expenses which are not incurred.* (emphasis supplied).

*City of Pittsburgh v. Pennsylvania Public Utility Commission,* 182 Pa.Super. 551, 581, 128 A.2d 372, 386 (1956).

■ In *Riverton Consolidated Water Co. v. Pennsylvania Public Utility Commission,* 186 Pa.Super. 1, 140 A.2d

114 (1958), the Commission recognized, for rate-making purposes, the utility's tax savings resulting from participation in the filing of a consolidated tax return. *Riverton,* the appellant in that case, argued that the Commission should have permitted a tax expense in a sum equal to the amount paid by the utility to its parent company [8] notwithstanding the diminished liability derived by joining in a consolidated return. The Superior Court rejected *Riverton's* argument and approved the Commission's justifiable consideration of the lessened tax liability in the rate-making process. The Superior Court said:

> The fact that Riverton actually pays to [its parent company] an amount for taxes greater than its proper proportionate share of the consolidated tax liability merely accomplishes in fact that which it is forbidden to do. The making of an improper payment does not eliminate its impropriety. *The only proper tax expense which Riverton may pass on to its customers is its proportionate share after the consolidated return is filed and the actual tax paid.* (Emphasis supplied).

*Id.,* 186 Pa.Super. at 20, 140 A.2d at 123. Our Courts have consistently held it to be improper to include, for rate-making purposes, tax expenses which, because of the filing of a consolidated return, are not actually payable. All tax savings arising out of participation in a consolidated return must be recognized in rate-making, otherwise we would be condoning the inclusion of fictitious expenses in the rates charged to the ratepayers.

One of the generally accepted rate-making principles is that utilities are permitted to set rates which will recover those operating expenses reasonably necessary to provide service to customers, while earning a fair rate of return on the investment in plant used and useful in providing

**8.** *Riverton,* as UGI in the case at bar, calculated its tax liability based upon tax rates applicable under a separate tax return. The tax sum that would be due upon the filing of a separate return was remitted to the parent corporation. The parent company then re-figured the taxes due under a consolidated return and paid that reduced consolidated amount.

adequate utility service. *City of Pittsburgh v. Pennsylvania Public Utility Commission*, 42 Pa.Cmwlth. 242, 247, 400 A.2d 672, 674 (1979). Of course, this cost of service includes a reasonable allowance for federal income taxes. *See The Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission*, 47 Pa.Cmwlth. 512, 409 A.2d 446 (1979). However, this Court has held that the Commission may properly exclude a portion of a utility's tax expense where there is evidence that the utility has not been afforded its fair share of benefits from filing a consolidated tax return with a parent corporation. *Bell Telephone Co. v. Pennsylvania Public Utility Commission*, 47 Pa.Cmwlth. 614, 619–622, 408 A.2d 917, 921–922 (1979),....

*Western Pennsylvania Water Co. v. Pennsylvania Public Utility Commission*, 54 Pa.Cmwlth. 187, 190, 422 A.2d 906, 908 (1980). We recently held in *Barasch v. Pennsylvania Public Utility Commission and Pennsylvania Power Company*, 507 Pa. 496, 491 A.2d 94 (1985) that the rate-making practice of "normalization" which, when "applied to income tax expense ... permits a public utility to include in its current rate base an income tax expense higher than that which it has been required to pay on the assumption that the taxes saved by accelerated depreciation are merely deferred," *Id.*, 507 Pa. at 500 n. 1, 491 A.2d 95 n. 1, violated the "actual taxes paid" doctrine. We disapproved of this concept concluding that it was contrary to the requirement that rates approved by the commission must be "just and reasonable." *Id.*, 507 Pa. at 515, 491 A.2d at 103. Where an expense is not actually incurred, be it for taxes or otherwise, it is improper to include it in the rates charged to the ratepayers.

 If a utility, because of its combining with a group, is able to obtain a desirable long term lease of property containing a very favorable rental which, through the passing years, becomes considerably less than market value, we would not sanction the inclusion of the market rental value in place of the actual rent in the rate-making process. If a

utility joins with non-utility companies in a buying group, and because of the increased purchasing power wielded by the group, it is able to purchase material, equipment, supplies, etc. at discount prices—lower than that which it would be required to pay if it made the purchases as a separate entity, we would not condone the inclusion of the higher costs in the rate-making process. It is a violation of basic rate-making principles to charge ratepayers for theoretical expenses which in practice the utility bears no liability. This is true no matter the category of expense. The ratepayers are entitled to the benefits of reduced tax expenses accruing to the utility by participation in a consolidated tax return as was filed in this case.

The order of the Commonwealth Court is affirmed and this case is remanded for proceedings consistent with this opinion.