548 A.2d 1310

David M. Barasch, Consumer Advocate, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

*Daniel Clearfield,* Assistant Consumer Advocate, with him, *David M. Barasch,* Consumer Advocate, for petitioner.

*Veronica A. Smith,* Assistant Counsel, with her, *John F. Povilaitis,* Deputy Chief Counsel, and *Daniel P. Delaney,* Chief Counsel, for respondent.

*Thomas P. Gadsden,* with him, *Walter R. Hall, II, Lynn A. Clouser* and *Susan Garland George;* Of Coun-

sel: *William P. Boswell, Morgan, Lewis & Bockius*, Secretary and General Counsel for The Peoples Natural Gas Company, for intervenor, The Peoples Natural Gas Company.

OPINION BY JUDGE CRAIG, October 11, 1988:

The Office of Consumer Advocate (OCA) petitions for review of an order of the Pennsylvania Public Utility Commission (PUC or commission) that approved a rate increase for the Peoples Natural Gas Company (Peoples or utility).[1]

Peoples does not pay federal income taxes directly to the federal government, but rather participates in a consolidated tax return filed by its parent corporation, Consolidated Natural Gas Company (CNG or parent). The PUC acknowledges that, where a utility realizes federal income tax savings because of its participation in a consolidated return, Pennsylvania law requires that those savings be passed on to the ratepayers by means of an adjustment to the utility's allowance for tax expense. However, the method that the PUC used to calculate consolidated tax savings in this case yielded no adjustment, although the method proposed by OCA would have reduced Peoples' tax expense allowance by approximately $1.7 million.

Therefore, this case presents the issue of whether the method used by the commission to calculate federal income tax savings resulting from consolidation should be determined as a matter of law or should be regarded as a matter within the discretion of the commission.

---

[1] *Pennsylvania Public Utility Commission v. The Peoples Natural Gas Co.*, Docket No. R-850270 (order entered October 31, 1986).

*History*

When consolidated tax returns are used, each subsidiary of a parent corporation calculates its separate income, deductions, tax liability and tax credits on a stand-alone basis. However, the subsidiary does not then file a separate federal income tax return or pay the calculated tax to the Internal Revenue Service (IRS). Rather, the subsidiary submits its calculations (and, typically, the amount of its stand-alone tax liability, if any) to the parent corporation. As is permitted by sections 1501-1505 of the Internal Revenue Code (Code), 26 U.S.C. §§1501-1505, the parent corporation then offsets taxable income generated by some subsidiaries with tax losses and credits generated by other subsidiaries to arrive at a figure representing the taxable income of the consolidated group. *See Continental Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission*, 120 Pa. Commonwealth Ct. 25, 548 A.2d 344 (1988).

Peoples is one of a group of thirteen wholly-owned subsidiaries of CNG. The subsidiaries include both regulated and nonregulated companies engaged primarily in various aspects of the business of discovering, developing, transporting and selling natural gas resources. Peoples calculates its stand-alone tax liability, but then pays that amount to a depository account set up by CNG. CNG subsidiaries with tax losses make withdrawals from that account to the extent of their negative income tax liabilities.

Peoples filed a rate increase request on January 28, 1986, seeking an increase in its base rates of approximately $19.9 million. The rate request included a claim for tax expense equal to Peoples' full stand-alone tax liability. The PUC instituted an investigation into the rate request, and various parties, including OCA, filed com-

plaints against the proposed increase. After prehearing conferences and sixteen evidentiary hearings, Administrative Law Judge MORRIS MINDLIN issued a recommended decision on September 10, 1986, proposing that Peoples be permitted to increase its base rates by $13.1 million.

After the filing of exceptions and reply exceptions to the recommended decision, the PUC issued an opinion and order on October 31, 1986, authorizing Peoples to increase its rates by $7.1 million. On the issue of consolidated tax savings, the PUC, applying the method of calculating such savings advocated by the commission's Office of Trial Staff, known as the "pour-over" or United Gas Pipe Line method, concluded as follows:

> We concur in the conclusion of the AJL that [Peoples] has not experienced and will not experience a consolidated tax savings which should be reflected in our tax calculations for Peoples.

Therefore, the commission allowed the full tax expense claimed.

We note that, by contrast, in our recent *Continental Telephone* case, the commission did *not* use the pour-over method in a consolidated tax return issue, and consequently reduced allowable tax expense.

### "Actual-Taxes-Paid" Doctrine

Before *Continental Telephone,* this court had also considered the problem of consolidated tax returns in *Cohen v. Pennsylvania Public Utility Commission,* 78 Pa. Commonwealth Ct. 545, 468 A.2d 1143 (1983), *aff'd sub nom. Barasch v. Pennsylvania Public Utility Commission,* 507 Pa. 561, 494 A.2d 653 (1985). *Cohen* involved a utility participating in a consolidated tax return, in a situation very similar to this case.

The PUC had allowed the full stand-alone tax expense claimed by the utility on the basis of its "chronic

loss" analysis of the issue of tax savings. That analysis held that there were no tax savings to be allocated among members of a group filing a consolidated return unless one or more of the members consistently generated tax losses and were projected to do so in the future, thereby demonstrating that some of the money paid by profitable members of the group to the parent for tax liability actually was being used as a subsidy for the "chronic loss" companies.

Only the question of the legality of the method used by the PUC to determine consolidated tax savings was before us on OCA's cross-appeal from the commission's order, not the merits of OCA's proposed method for adjusting tax expense. We noted that a utility may pass along to its ratepayers only those expenses or costs that it actually incurs, because any other approach would permit the utility, by charging higher rates than necessary, to gain a profit from its customers under the guise of recovering operating expenses. *Id.* at 558, 468 A.2d at 1150.

We therefore held that the PUC's insistence on the presence of a chronic loss company was error of law, and ordered that the case be remanded to the commission for a determination of how the utility should account for the consolidated tax savings. *Id.* at 559-60, 468 A.2d at 1151.

On further appeal by the PUC and the utility, the Pennsylvania Supreme Court affirmed. *Barasch v. Pennsylvania Public Utility Commission,* 507 Pa. 561, 493 A.2d 653 (1985). The Supreme Court noted that the arguments advanced by the utility and the PUC in support of the chronic loss method of calculating consolidated tax savings failed to recognize the basic ratemaking maxim that only expenses that are actually paid or payable by the utility may be included for the purpose of

ratemaking. The Supreme Court quoted the Superior Court as follows:

> 'The fact that Riverton actually pays to [its parent company] an amount for taxes greater than its proper proportionate share of the consolidated tax liability merely accomplishes in fact that which it is forbidden to do. The making of an improper payment does not eliminate its impropriety. *The only proper tax expense which Riverton may pass on to its customers is its proportionate share after the consolidated return is filed and the actual tax paid.'*

*Barasch,* 507 Pa. at 568, 493 A.2d at 656 (quoting *Riverton Consolidated Water Co. v. Pennsylvania Public Utility Commission,* 186 Pa. Superior Ct. 1, 20, 140 A.2d 114, 123 (1958), emphasis supplied in *Barasch*). In a strong affirmance of the "actual taxes paid" doctrine, the Court then held:

> All tax savings arising out of participation in a consolidated return must be recognized in ratemaking, otherwise we would be condoning the inclusion of fictitious expenses in the rates charged to the ratepayers.

*Barasch,* 507 Pa. at 568, 493 A.2d at 656.

## Positions of the Parties

This court's scope of review of a final order of the Public Utility Commission is "limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or the Commission's findings and conclusions are, or are not, supported by substantial evidence." *Barasch v. Pennsylvania Public Utility Commission,* 507 Pa. 561, 566, 493 A.2d 653, 655 (1985). *See* 2 Pa. C. S. §704.

On the basis of the *Barasch* and *Cohen* cases, discussed above, OCA contends that, as a matter of law,

the PUC had no discretion to choose between two methods of calculating consolidated tax savings, when the method advocated by OCA resulted in a positive tax savings amount, but the method advocated by the commission's Trial Staff did not. OCA argues that the commission was required by law to adopt its method.

The method advocated by OCA in these proceedings for calculating consolidated tax savings may be characterized as a "modified effective tax rate" method. An effective tax rate method calculates the consolidated tax savings by determining the difference between the total of the stand-alone tax liabilities of all of the members of the consolidated group and the tax actually paid after offsetting of income because of consolidation and then allocates those savings among all of the members. The rationale of this method is that, because the parent pays tax at the marginal rate but on an amount of income reduced by consolidated offsetting, the parent, and in turn the subsidiaries, should be viewed as paying at an "effective" tax rate that is below what they would have paid if the tax had been calculated by applying the marginal tax rate to the full income of each member on a stand-alone basis.

In this case OCA's expert witness, Nancy B. Bright, calculated the amount of savings by an effective tax rate method and then allocated those savings among members of the group based on the ratio between the individual member's stand-alone tax liability and the total of the stand-alone liabilities of all subsidiaries with positive taxable income. OCA Statement No. 2 at 30; R.R. 29a. Ms. Bright's method was a modified instead of a pure effective tax rate method because (1) it examined tax losses before consideration of investment tax credits (ITCs) in order to avoid any flow-through of those credits to companies other than those to whom they were due, and (2) it excluded losses of regulated compa-

nies from consideration in order to avoid any flow-through of accelerated depreciation benefits accruing to those companies, which would violate federal tax law. *Id.* at 31; R.R. 30a. The commission's witness agreed that these modifications to the effective tax rate method successfully eliminated concerns of violations of federal tax law in regard to ITCs and accelerated depreciation benefits. Notes of Testimony 1261; R.R. 103a. As noted above, OCA's calculations showed a consolidated tax savings of approximately $1.7 million. As OCA emphasizes in its brief, such a reduction to allowable tax expense would have reduced Peoples' allowable revenues by approximately $3.4 million.

The PUC responds by arguing that the *Barasch* decision, although it rejected the chronic loss method as a matter of law and required that all consolidated tax savings must be recognized in ratemaking, did not require that the commission adopt any particular method for calculating consolidated tax savings. The PUC characterizes its choice of one method for calculating such savings over another in this case as being simply the resolution of a *factual* question after consideration of conflicting expert testimony. Therefore, the commission argues, the issue here is not one of law but rather one of fact, and hence not within our scope of review, apart from our assuring that the finding of fact was based on substantial evidence.

The method of calculating consolidated tax savings advocated by the witness for the Office of Trial Staff, Robert F. Wilson, and adopted by the commission in its order, is that known as the "pour-over" or United Gas Pipe Line method.[2] This method first considers the

---

[2] The United States Supreme Court approved the Federal Power Commission's use of this method for calculating consolidated tax savings in *Federal Power Commission v. United Gas Pipe Line Co.,* 386 U.S. 237 (1967).

*nonregulated* members of a consolidated group as a sub-group. Nonregulated companies' losses are first offset by the full amount of nonregulated companies' gains. If there are losses not absorbed by this offsetting, then those losses are "poured over" to offset income of regulated companies. In this case, the total income of the nonregulated companies exceeded their total losses. Therefore, the commission's application of a pour-over method resulted in no consolidated tax savings and hence no adjustment.

### Analysis

The PUC's characterization of its adoption of the pour-over method as a factual determination is not convincing. Although the commission's opinion did not elaborate on the commission's reasons for adopting the pour-over method, the PUC's result followed the rationale advanced by that method's advocate, Mr. Wilson. However, an examination of that rationale shows that it is not based on purely factual considerations. In his prepared testimony, Mr. Wilson stated:

> The pour-over method limits the non-utility losses to be allocated to utilities to the amount which is not absorbed by non-utility profits. This is done to avoid excessive inter-industry cross-subsidization, by the non-regulated sector of the regulated utilities.

Trial Staff Statement No. RFW-1 at 9; R.R. 59a. In response to a question from Judge MINDLIN during cross-examination, Mr. Wilson said:

> I agree; the whole thing comes down to a matter of philosophy of fairness: is it fair to take all of the losses of the non-regulated sector and lower the rates of the regulated sector such that it reflects the actual taxes paid?

N.T. 1269; R.R. 111a. The commission's adoption of the pour-over method clearly reflected a policy decision by the PUC, not simply the resolution of a factual dispute. By this description, the issue as framed from the commission's point of view is essentially the same as OCA has framed it: Does the commission have the discretion to choose between pour-over and effective tax rate methods for calculating consolidated tax savings, or is the commission's discretion constrained by *Barasch*?

*Barasch* has limited the PUC's discretion on the issue of the proper method for calculating consolidated tax savings. As noted above, the Court in *Barasch* not only required that all "tax savings" resulting from consolidation be recognized in ratemaking, but also quoted with emphasis the Superior Court's formulation that "[t]he only proper tax expense which [the utility] may pass on to its customers is *its proportionate share* after the consolidated return is filed and the actual tax paid." (Emphasis added.) This language is far closer to a description of an effective tax rate than to a description of pour-over.

Although the Supreme Court did not expressly require the PUC to apply an effective tax rate method in *Barasch*, the Court's endorsement of *"proportionate share* after . . . the actual tax [is] paid" as the "only proper tax expense" strongly implies that the Court requires that an effective tax rate method be used. (Emphasis added.)

Moreover, the commission's choice of pour-over method in this case is essentially very similar to its choice of the chronic loss method disapproved in *Barasch*. In both cases the PUC imposed a barrier threshold to be surmounted—proof of the presence of a chronic loss company or proof of nonregulated losses in excess of nonregulated gains—before the commission would agree to allocate to utility members of a group

some of the tax savings that the parent concededly realized from consolidation. In both methods, the rationale was that of avoiding subsidization of utilities by nonregulated affiliates. However, this analysis ignores the point that the purpose of filing consolidated tax returns is to accomplish a form of subsidization of some members of the group by other members by means of the shifting of losses to offset unrelated gains.

The idea that such offsetting should be minimized to the extent that it works to the benefit of utility ratepayers is a self-serving overlay upon the theory of consolidated tax returns. As we observed in *Cohen:*

> The decision to file a consolidated return is one which the parent and its member companies must make; we may reasonably conclude that, when they do choose to file on a consolidated basis, they perceive some financial benefit from doing so.

*Cohen,* 78 Pa. Commonwealth Ct. at 560, 468 A.2d at 1151.

If the parent corporation is concerned about the benefits of consolidated tax savings reaching the ratepayers of its utility subsidiary, the parent always has the option of removing the utility from the consolidated group. As the Trial Staff's witness acknowledged, however, public utilities, because of the guaranteed rate of return assured to them pursuant to regulation, reliably generate positive income. N.T. 1271; R.R. 113a. Because of consolidation, this positive income is available to the group for offsetting of losses of other utilities. If the parent chooses to keep the utility in the consolidated group, we may conclude that the *reliability* of this source of positive income represents a benefit to the parent, even in a year in which nonregulated subsidiaries' losses do not exceed nonregulated subsidiaries' gains.

The commission also repeats in its brief the argument advanced by the Trial Staff's witness that, in this case, CNG could eliminate any consolidated tax savings by the simple expedient of combining all of the nonregulated subsidiaries into one company. Because that combined company would have an overall gain, as does the utility subsidiary, there would be no losses available for offsetting when the consolidated return was prepared. Although we agree with that assessment of the effect of a change in corporate structure, we note that the parent corporation must make the decision as to whether the benefit of restructuring would outweigh the cost. If the parent chooses to restructure, it may do so; if the parent chooses not to restructure, then we may conclude that the parent has legitimate business reasons for not doing so.

Within the existing structure, however, the language and the overall thrust of the Supreme Court's decision in *Barasch* require that the benefits accruing to the parent company as a result of the filing of a consolidated tax return be apportioned among all the members of the consolidated group, and not be withheld discriminatorily from some members simply because those members happen to be regulated utilities.

Peoples, as intervenor in this appeal by OCA, has sought to raise issues beyond those raised by OCA and the commission, namely, whether the actual-taxes-paid doctrine of *Barasch* should be reexamined (1) in the light of a recent federal appeals court decision criticizing the concept of actual taxes paid and holding that the Federal Energy Regulatory Commission's use of a markedly different approach to consolidated tax savings was sufficiently reasonable so as to be within the limits of that agency's discretion, *City of Charlottesville v. Federal Energy Regulatory Commission*, 774 F.2d 1205 (D.C. Cir. 1985), *cert. denied*, 475 U.S. 1108 (1986), and (2)

in the light of a series of recent private letter rulings by the Internal Revenue Service expressing the opinion that application of a consolidated tax savings adjustment to reduce a utility's allowance for federal income tax expense would violate provisions of the Internal Revenue Code relating to utilities' use of accelerated depreciation. Because Peoples has chosen to intervene in this appeal, rather than to file its own cross-appeal, these new issues have not been raised by any appellant or appellee. Therefore, they are not properly before us, and we shall not consider them.[3]

This court must remand this case and direct that the modified effective tax rate method shall be applied to determination of the utility's tax expense for recomputation of the proper revenues and rates.

### ORDER

NOW, October 11, 1988, the order of the Pennsylvania Public Utility Commission at Docket No. R-850270, entered October 31, 1986, is reversed. This matter is remanded to the commission with instructions to the commission to issue a new order after incorporating in its rate calculations the consolidated tax savings adjustment proposed by the Office of Consumer Advocate.

Jurisdiction relinquished.

This decision was reached prior to the resignation of Judge MACPHAIL.

---

[3] We have, in any event, disposed of the accelerated depreciation deductions question in the *Continental Telephone* case, referenced above, by holding that consolidated tax savings adjustments do not violate the accelerated depreciation provisions if the adjustments do not diminish the amount required to be entered into a reserve for deferred taxes under those provisions.