CITY OF LANCASTER (SEWER FUND), Petitioner,

v.

PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 2001.
Decided Feb. 22, 2002.

---

Kenneth Zielonis, Harrisburg, for petitioner.

John A. Levin, Harrisburg, for respondent.

Before SMITH–RIBNER, Judge, PELLEGRINI, Judge and MIRARCHI, Jr., Senior Judge.

OPINION BY Judge SMITH–RIBNER.

In this public utility case, the parties essentially litigate the question of how much litigation is excessive. The case arises from the City of Lancaster's (City) efforts to increase the rates that it charges to provide wastewater service. An administrative law judge (ALJ) for the Pennsylvania Public Utility Commission (Commission) entered a recommended decision that significantly reduced the rate increase sought by the City, mostly on the grounds that the expenses claimed by the City were excessive. The Commission denied the City's exceptions and adopted the ALJ's recommended decision. The principal expense at issue is the so-called "rate case" expense, which represents the cost that the City has incurred in seeking this rate increase, and the major bulk of the rate case expense is the City's costs of litigation. The City maintains that the Commission's order is not supported by substantial evidence because the order was based upon an average of the rate case expenses that other utilities have incurred rather that the actual rate case expense that the City incurred.

Section 1301 of the Public Utility Code, 66 Pa.C.S. § 1301, gives the Commission jurisdiction over municipal utility services only to the extent that the service is provided beyond the municipality's corporate limits. The wastewater service provided by the City through its Sewer Fund extends beyond the City's corporate limits and is subject to rate regulation by the Commission. On February 28, 2000, the City proposed raising its rates to customers outside the City's corporate limits. The proposed rates were designed to produce a $349,970 annual increase in operat-

ing revenue, which is a 46 percent increase over the revenue generated under the City's existing rates. The City voluntarily suspended the effective date of the rate increase until June 2. The Commission suspended the proposed rates on June 3 and commenced a rate investigation by order dated June 8. Shortly thereafter, the Office of Consumer Advocate (OCA) filed a notice of intervention, the Office of Trial Staff (OTS) filed a notice of appearance and Lancaster Township filed a formal complaint against the proposed rate increase.

■ The City and the OCA announced a tentative settlement of all issues on July 25, 2000, which the OTS did not join. Thereafter, the City, the Township and the OCA filed a proposed stipulation of settlement with the ALJ, which the OTS opposed. Under the proposed settlement, the City claimed a total rate case expense of $235,000 to be normalized over 18 months, resulting in an annual rate case expense of $156,667.[1] The claim was for the following rate case expenses: legal ($125,000), engineering ($35,000), financial consulting services ($42,200) and miscellaneous ($32,500). The ALJ issued a recommended decision on November 28, 2000 that rejected the rate structure provisions of the settlement and recommended a $223,189 increase in City rates.

The ALJ concluded that the City's rate case expense claim was excessive. This conclusion was based upon a comparison to the rate case expenses incurred by other service providers. The City provided actual invoices to substantiate its claimed expense, but the ALJ did not find this evidence persuasive. The ALJ was persuaded instead by the testimony of OTS witness Eric Van Jeschke, who compiled a list of companies that had requested revenue increases between $100,000 and $1,000,000. Jeschke testified that the average rate case expense for these companies was $60,651, normalized on average to $23,737. In accordance with Jeschke's testimony, the ALJ reduced the City's rate case expense to $60,000. The ALJ normalized that amount over a period of 29.5 months, based on the City's filing history, resulting in an annual rate case expense of $24,407. The ALJ also reduced the general indirect administrative expense that the City allocated to customers outside its cor-

1. The Commission's ratemaking process is based, in part, on the expenses that the utility annually incurs. In filing for a general rate increase under Section 1308 of the Public Utility Code, *as amended,* 66 Pa.C.S. § 1308, a utility must submit a record of revenues and expenses actually experienced for a period of one year ending no more than 120 days before the date of the filing (the historic test year). 52 Pa.Code § 53.52(b)(2). To satisfy its burden that requested rates are just and reasonable, the utility may file a projection of its anticipated expenses and revenues for a period of one year beginning the day after the end of the historic test year (the future test year). *Id.;* Section 315(e) of the Public Utility Code, 66 Pa.C.S. § 315(e). The historic test year data is to provide a picture of the utility's immediate operating history and to show typical conditions. *Columbia Gas of Pennsylvania, Inc. v. Pennsylvania Public Util-*

*ity Commission,* 149 Pa.Cmwlth. 247, 613 A.2d 74 (1992). Once the test year data has been adjusted for ratemaking purposes, it is called the *pro forma* test year.

"Normalization" is the ratemaking process used to calculate a normal expense that occurs other than on an annual basis. For example the expense of litigating a rate increase case will not be incurred each year, but it is nonetheless a normal expense of utility operation. Because it recurs from time to time, it is accepted that some reasonable, allocable portion should be included in the rates that are set. *See Barasch v. Pennsylvania Public Utility Commission,* 507 Pa. 496, 491 A.2d 94 (1985). The two test-year periods used in this case are the twelve months ending September 30, 1999 (historic test year) and the twelve months ending September 30, 2000 (future test year).

porate limits from $50,252 to $38,178. The Commission denied the City's exceptions and adopted the ALJ's recommended decision, permitting the City to file tariffs or tariff supplements containing rates designed to produce additional annual revenues of $223,189 from its customers located outside its corporate boundaries.

■ The Court's review of an order of the Commission is limited to determining whether constitutional rights were violated, an error of law was committed or necessary findings of fact are not supported by substantial evidence. *City of Lancaster (Water) v. Pennsylvania Public Utility Commission*, 769 A.2d 567 (Pa. Cmwlth.2001). The Court may not substitute its judgment for that of the Commission and may not "indulge in the processes of weighing evidence and resolving conflicting testimony." *Popowsky v. Pennsylvania Public Utility*, 550 Pa. 449, 460, 706 A.2d 1197, 1202 (1997). The Court must defer to the expertise of the Commission, so long as there is a rational basis for the Commission's methodology. *Id.*

■ A public utility is entitled to a rate that allows it to recover those expenses that are reasonably necessary to provide service to its customers as well as a reasonable rate of return on its investment. *Western Pennsylvania Water Co. v. Pennsylvania Public Utility Commission*, 54 Pa.Cmwlth. 187, 422 A.2d 906 (1980). Prudently incurred rate case expenses are among the reasonably necessary expenses that public utilities are entitled to recover. *Butler Township Water Co. v. Pennsylvania Public Utility Commission*, 81 Pa.Cmwlth. 40, 473 A.2d 219 (1984). The public utility bears the burden of proving that the rate case expenses were justly and reasonably incurred. *Popowsky v. Pennsylvania Public Utility Commission*, 674 A.2d 1149 (Pa.Cmwlth. 1996) (hereinafter *LP Water*).

■ The Commission did not base its finding regarding the City's rate case expense upon substantial evidence specific to the City. The Commission has not identified any particular expenditure in the invoices provided by the City as being unreasonably or excessively incurred. Unlike *LP Water* where the Court upheld a reduction in a claimed rate case expense, the Commission made no finding that the City's legal actions were excessive. *Compare LP Water*, 674 A.2d at 1154 n. 11 ("LP's attorney filed more than 100 separate motions to dismiss complaints of individual rate payers, and sent intimidating letters to 127 complainants, along with 'withdrawal of complaint' forms."). Rather than analyze the evidence that the City provided of its actual expenses, the Commission based its decision upon the average rate case expenses that other utilities have incurred.

Most importantly, the $60,000 amount that the Commission allowed the City as a rate case expense is not calculated based upon evidence of actual expenses incurred by the City. Rather, it is a hypothetical amount that the Commission deemed reasonable based upon amounts that other utilities have spent in other cases. The Pennsylvania Supreme Court has rejected such hypothetical expenses in ratemaking cases. In *Barasch v. Pennsylvania Public Utility Commission*, 507 Pa. 561, 493 A.2d 653 (1985), the Commission permitted a utility that had filed its tax return as part of a corporate conglomerate to recover the hypothetical expense that the utility would have paid if it had filed a separate tax return. In reversing the Commission's order, the Supreme Court stated that the Commission may not include hypothetical expenses that the utility has not actually incurred:

Although the Commission is vested with broad discretion in determining what ex-

penses incurred by a utility may be charged to the ratepayers, the Commission has no authority to permit, in the rate-making process, the inclusion of hypothetical expenses not actually incurred. When it does so, as it did in this case, it is an error of law subject to reversal on appeal.

*Id.*, 507 Pa. at 566, 493 A.2d at 655.

 The Commission must consider "evidence of actual expenses, properly adjusted when the evidence warrants." *Barasch*, 507 Pa. at 567, 581, 493 A.2d at 656 (quoting *City of Pittsburgh v. Pennsylvania Public Utility Commission*, 182 Pa.Super. 551, 128 A.2d 372, 386 (1956)). The Commission did not permit the City to charge ratepayers a greater expense than the City actually spent as the Commission did in *Barasch*. Nevertheless, the Court concludes that the Commission erred by calculating the amount of the expense allowed without basis in the expenses that the City actually incurred. Unlike other calculations that the Commission must make, a utility's rate case expense can be precisely calculated based upon the reasonable expenditures that the utility actually made.[2] As the City correctly argues, rate case expense is highly specific to the particular utility and to the particular rate case in question. Rate case expenses may be influenced by factors such as whether the utility has an in-house legal staff, and a utility faced with aggressively litigious opponents may be forced to incur abnormally large rate case expenses even when the utility acts prudently. The average total rate case expense incurred by other utilities has no bearing upon whether the various rate case expenditures that the City actually incurred were excessive.

 The Commission provided only two other grounds for its reduction of the City's rate case expense. First, the Commission relied upon the fact that the City's claimed rate case expense included a request for payment for services associated with years beyond the test-year expenses. Disallowing a rate case expense on these grounds is incongruous. It is well settled that rate case expense is an expense that *occurs other than on an annual basis.* *LP Water*; *Butler*. Rather than limiting such expenses to the amounts incurred in a year, the proper approach is to calculate the entire expense that the utility incurred in seeking the rate increase and to then normalize that amount to determine the annual expense that can be used as an adjustment in the *pro forma* test year. *Id.* Second, the Commission noted that the City's rate case claim represented 44.8 percent of the City's total revenue request. Although not conclusive, this percentage might be relevant in determining whether the City was excessively litigious. The mere fact that the rate case expense accounts for a large percentage of the total revenue request is not, in and of itself, a valid basis for reducing a prudently incurred rate case expense. *Compare Pennsylvania Public Utility Commission v. Borough of Schuylkill Haven*, 85 Pa. P.U.C. 187 (1995) (approving a normalized rate case expense approximately double the approved annual rate increase).

 As previously noted, the Commission made no finding that the City has, in fact, been excessively litigious in seeking this rate increase. In summary, the total rate case expense allowed to the City must be calculated based upon expenses that the

---

**2.** *Compare Blue Mountain Consolidated Water Co. v. Pennsylvania Public Utility Commission*, 57 Pa.Cmwlth. 363, 426 A.2d 724 (1981) (explaining why the Commission may use cost of capital statistics of comparable utilities to reach a fair calculation of a utility's cost of capital).

City actually incurred and not upon an average of the amounts that other utilities have incurred. *Barasch.* Although the Court hesitates to further perpetuate this litigation, the Court must remand this matter to the Commission for the narrow purpose of determining the amount of actual rate case expense that the City prudently incurred.[3]

■■■ The City also claims that the Commission erred in reducing the City's general indirect administrative expense and in failing to adjust the City's wage claim to reflect a 4 percent annual wage increase to its unionized employees effective January 1, 2001. The Commission found the testimony of Jeschke more persuasive than the evidence on the general indirect administrative expense offered by the City. The Commission determined that Jeschke's calculation was more accurate because it was based upon actual 1998 costs, which were then adjusted to reflect an estimated 3 percent wage increase. Concerning the claimed 4 percent wage increase, the City improperly proffered direct evidence of this wage increase in the rebuttal phase of the rate proceeding. *See* 52 Pa.Code. § 5.243(e) (prohibiting the introduction of evidence during a rebuttal phase that ought to have been included in the case-in-chief). Furthermore, the Commission found the City's evidence of the 4 percent wage increase to be speculative. The Commission's findings on the City's general indirect administrative expense and the wage increase are supported by substantial evidence and may not be disturbed by the Court. Accordingly, the Commission's order as to the general indirect administrative expense and the wage increase must be affirmed. *Popowsky.*

The Commission's order is reversed in part, however, as to the rate case expense allowed, and the case is remanded to the Commission for further proceedings.

## *ORDER*

AND NOW, this 22nd day of February, 2002, the order of the Pennsylvania Public Utility Commission is hereby reversed in part and affirmed in part in accordance with the foregoing opinion. The case is remanded to the Commission for the narrow purpose of determining the amount of actual rate case expense that the City of Lancaster (Sewer Fund) prudently incurred.

Jurisdiction is relinquished.

---

**3.** The City does not argue on appeal to this Court that the Commission erred in applying a normalization period of 29.5 months. The Court agrees with the Commission that the

normalization period must be calculated based upon the City's filing history. *LP Water.*