# Butler Township Water Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

# Butler Township Water Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

# Freeport Water Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued December 6, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and BARRY.

*William J. LeBuhn,* with him *Walton F. Hill* and *Kathy Lee Pape,* for petitioners.

*Frank B. Wilmarth,* with him *Steven A. McClaren,* Assistant Counsels, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*William H. Kain, Kain, Brown and Roberts,* and *Edward F. Sebastian,* for Amicus Curiae, The National Association of Water Companies.

OPINION BY JUDGE ROGERS, March 12, 1984:

We have consolidated for argument and disposition the appeals of the Butler Township Water Company (Butler) and the Freeport Water Company (Freeport) from rate case orders of the Pennsylvania Public Utility Commission (PUC). The appellants are wholly owned subsidiaries of the Generel Waterworks Corporation (GWC) and GWC is a wholly owned subsidiary of I.U. International Corporation (IUIC).

Butler filed tariffs designed to produce additional annual revenues of $151,814 for the test year ending March 31, 1981. PUC allowed $73,615.

Freeport filed tariffs designed to produce additional annual revenues of $93,323 for the test year ending December 31, 1981. PUC allowed $53,804.

The appellants challenge: (1) PUC's treatment of their current and past rate case expenses, (2) PUC's refusal to allow recovery of what they variously call carrying charges, cost of funds or interest on items of expense required by PUC to be amortized or normalized over a period of time and, (3) PUC's disallowance as an operating expense of management service fees paid to I.U. International Management Corporation (IUIMC), another subsidiary of IUIC.

The appellants' challenges (1) and (2) above are identical as to facts and law; Freeport has not briefed them; and the parties agree that our disposition of Butler's appeals will apply to Freeport's case without further mention of Freeport. With respect to challenge (3), concerning the management service fees, Freeport says that it has adduced an item of evidence in addition to Butler's presentation, with the

result that as to (3) we will discuss and dispose of each appellant's challenges.

## Current Rate Case Expense

Butler claimed an estimated current rate case expense of $37,989. The PUC allowed Butler one-half of the amount claimed, $19,996 [sic] because it believed that the utility's shareholders should bear the burden of the other half.

The PUC advances two theories for this action: The first is that of shared benefits, that is, that rate increases benefit both the shareholder and the ratepayer, and both should bear a portion of the costs incurred in securing a rate increase. The PUC cites as authority its own decision in *Pennsylvania Public Utility Commission v. Pennsylvania Power Co.*, R-811510 (January 22, 1982), where it wrote:

> Our conclusion, that a fifty-fifty sharing between the stockholders and ratepayers, of the prudently incurred current rate case expense is an appropriate balance of the respective interests.

The general rule is that a public utility is entitled to recover in rates those expenses reasonably necessary to provide service to its customers and to earn a fair rate of return on the investment in plant used and useful in providing service. *Western Pennsylvania Water Co. v. Pennsylvania Public Utility Commission*, 54 Pa. Commonwealth Ct. 187, 422 A.2d 906 (1980). Operating expenses include prudently incurred rate case expenses. *Driscoll v. Edison Light and Power Company*, 307 U.S. 104 (1939); *West Ohio Gas Company v. Public Utility Commission of Ohio*, 294 U.S. 63 (1935). Obviously, the refusal to allow the recovery of a proper expense diminishes to the same extent the utility's return on investment. There

is no evidence in the record that the rate case expenses claimed here were unreasonable, imprudently incurred or excessive in amount.

The second reason advanced by the PUC in support of dividing rate case expenses between the ratepayers and stockholders is that such action will discourage utilities from filing repeated and excessive rate claims, from relitigating matters previously settled, from massing legal and technical expertise in an attempt to overcome their opponents and regulators, and from operating their businesses inefficiently. It is reasonable to suppose that the policy could have this effect. But, as the appellants might argue, it is also reasonable to suppose that the policy could also discourage applications for rate increases necessary to maintain efficient public service.

The declaration of a policy based on general conclusions may not be substituted for an evaluation of the evidence in each case. *Aizen v. Pennsylvania Public Utility Commission*, 163 Pa. Superior Ct. 305, 60 A.2d 443 (1948). Although the PUC may adopt and follow a policy with respect to matters within its discretion, the exercise of such discretion is not without limitations.

> The Commission's power to act by way of order requires findings of fact, based on the evidence, necessary to support the order. A previously adopted policy may not furnish the sole basis for the Commission's action in a particular case. Policy cannot be made a substitute for evidence in a proceeding before it. (Citations omitted.)

*Id.* at 316, 60 A.2d at 449.

As noted, the PUC has made no findings of fact upon which a decision could be made that the rate case expenses were imprudent or excessive.

Finally, at argument, counsel for the appellants informed us that the PUC has, since this case was decided below, abandoned the policy complained of and in more recent cases has reverted to its immemorial practice of allowing the full amount of reasonable rate case expenses as an operating expense.

We will reverse the PUC's order in this respect.

### 1980 Rate Case Expenses

In *Pennsylvania Public Utility Commission v. Butler Township Water Company*, R-80041138 (December 19, 1980), the PUC granted Butler a rate increase and ordered a three-year normalization of Butler's current expense for that, the 1980 case, in the amount of $39,162. The rates approved by the PUC in December, 1980 remained in effect until April 8, 1982, about sixteen months, when Butler's new rates allowed in the case *sub judice* became effective.

In this 1981 rate case, Butler claimed the unrecovered portion of the 1980 normalized rate case expenses in the amount of $13,054.

Normalization of an expense is the name given to the adjustment of an item of recurring expense where the amount of the expense incurred in the test year is greater or less than that which the utility may be expected to incur annually during an estimated life of new rates. The amortization of an expense is different; it is the process by which the full amount of an atypical, nonrecurring expense is recovered over a fixed number of years. Unlike an amortized expense, a normalized expense may result in the recovery of an amount greater or less than the amount of the expense actually incurred. Hence, where as here, an expense is normalized over a period of years and the utility finds it necessary to seek rate relief before the end of the term of normalization, the utility may not recover the balance of the normalized expense in the

new proceedings. Conversely, if the rates granted to a utility remain in effect beyond the normalization period the utility may recover more than it originally spent.

The ineluctable conclusion of these fundamentals is that Butler may not recover the unrealized portion of its normalized 1980 rate case in this new case instituted before the period of normalization.

Butler also contends that the PUC's order in the 1980 case directing the three-year normalization of rate case expenses was not supported by substantial evidence of record. That would have been a proper subject of appeal from the 1980 order; it is not cognizable in this case.

We will affirm the PUC's order in this respect.

### 1977 and 1979 Rate Case Expense

In addition to directing the three-year normalization of Butler's 1980 rate case expenses, the PUC, by order in the 1980 case, directed amortization of the balance of Butler's 1977 and 1979 rate case expenses in the amount of $47,810 over a ten-year period. As noted, Butler did not appeal this order. In this case, it resurrects its claim for 1977 and 1979 expenses by asking for $71,696 to be amortized over five years. The PUC naturally rejected this claim and reconfirmed the 1980 order directing the continued ten-year amortization of 1977 and 1979 expenses in the amount of $4781 per year. Butler contends that the PUC erred in assigning a useful life of ten years to its 1977 and 1979 rate case expenses.

The record shows that Butler filed for rate increases in 1977, 1979, 1980 and 1981, each time incurring substantial legal expenses in relation to the number of customers it serves. Butler's 1981 rate case expenses, which PUC normalized over two years, are in an amount which could be a real burden on its

ratepayers, if covered in one year. The length of the period fixed for the recovery of expenses incurred outside the test year is a determination peculiarly within the discretion and expertise of the PUC. *See Blue Mountain Consolidated Water Co. v. Pennsylvania Public Utility Commission,* 57 Pa. Commonwealth Ct. 363, 426 A.2d 724 (1981). It does not appear to us that the PUC's determination in this regard was unreasonable.

We will affirm the PUC's order in this respect.

### Interest on Deferred Charges

Butler submitted, as part of its rate case expense, a claim for $19,807 representing what it calls "carrying charges" or "cost of funds" on the balance of unamortized expenditures for rate cases, flood and freeze-up damages and a water leak survey. Butler's thesis is that since it can recover such expenses only over a period of time it should be compensated for the use of the funds during the recovery period. The PUC summarily denied this claim for want of legal basis. We agree.

A similar issue was before the court in *Pennsylvania Electric Company v. Pennsylvania Public Utility Commission,* 53 Pa. Commonwealth Ct. 186, 417 A.2d 819 (1980). Penelec alleged that the PUC erred in excluding from its rate base the unamortized balance of its rate case expenses, flood expenses and deferred energy costs. By the terms of the PUC's order each of these expenses was amortized over a period of time with a portion of each recovered annually as an operating expense. Citing *UGI Corporation v. Pennsylvania Public Utility Commission,* 49 Pa. Commonwealth Ct. 69, 410 A.2d 923 (1980), we held that a utility may not capitalize an item in its rate base and at the same time recover an item as an expense from ratepayers. *Pennsylvania Electric*

*Company v. Pennsylvania Public Utility Commission, supra,* at 192, 417 A.2d at 823.

Although Butler does not seek to have the funds it expended on its rate case, damage repairs and leak surveys included in its rate base, the result contemplated is identical to the result prohibited in *Pennsylvania Electric,* that is, a return on the unamortized balance of an amortized expense.

We will affirm the PUC's order in this respect.

### Butler's Management Service Fee

Butler is at the bottom of a three-tier management organization. Certain of its management and service functions are performed for it and for other GWC subsidiaries by an affiliate of GWC called General Waterworks Management and Service Corporation (GWM&S) and an affiliate of IUIC called I.U. International Management Corporation (IUIMC). IUIMC charges GWM&S a flat fee for its services which for the calendar year 1980 amounted to $750,000. GWM&S combines the IUIMC fee with its own costs in the calculation of a base hourly rate to be charged Butler and the other operating subsidiaries. For the test year ending March 31, 1981, GWM&S charged Butler $8,916 for management services, an estimated $3,027 of which represents Butler's share of the fee charged by IUIMC. The PUC disallowed the IUIMC portion of the management and services fee, finding that Butler had not submitted sufficient documentation of the nature of the services performed by IUIMC or of the reasonableness of the charges made. Butler contests this finding alleging that its claim for the management service fee, including the IUIMC fee, is fully supported by record evidence.

Section 1 of the Public Utility Code, 66 P.C.S. §2106 empowers the PUC to disallow expenses paid by a utility to an affiliate:

In any proceeding . . . involving rates or practices of any public utility, the commission may disallow, in whole or part, any payment or compensation to an affiliated interest for any services rendered . . . under existing contracts or arrangements with such affiliated interest unless such public utility shall establish the reasonableness thereof. In such proceeding *no payment shall be approved or allowed by the commission, in whole or in part, unless satisfactory proof is submitted to the commission of the cost to the affiliated interest of rendering the service.* . . . No proof shall be satisfactory, within the meaning of the foregoing sentence, unless it includes the original (or verified copies) of the relevant cost records and other relevant accounts of the affiliated interest, or such abstract thereof or summary taken therefrom as the commission may deem adequate, properly identified and duly authenticated. (Emphasis added.)

We have examined the record, which includes an auditor's report prepared by Ernst and Whinney, accountants, upon which Butler relies heavily, and we agree that Butler has not adequately supported its claim for the IUIMC fee. The record contains no evidence concerning the cost incurred by IUIMC in rendering service to GWM&S and Butler. Although the Ernst and Whinney report concludes that the overall benefits received by Butler and other GWC subsidiaries exceed the fee charged by IUIMC, the record does not contain any IUIMC cost records, invoices, time records or other data which would establish the cost to IUIMC of its rendering its services.

In prior rate cases involving GWC subsidiaries, the PUC made allowance of fees on the basis of the Ernst and Whinney reports. However, in *Pennsyl-*

*vania Public Utility Commission v. Dauphin Consoli-dated Water Company,* R-80061242 (April 3, 1981) and *Pennsylvania Public Utility Commission v. Free-port Water Company,* R-80091319 (June 26, 1981), PUC cautioned that additional support for the IUIMC fee would be required in future proceedings:

> We take particular note that evidentiary sup-port [the Ernst and Whinney report] for this claim [the IUIMC fee] is minimally sufficient for the data is becoming stale and more rigor-ous proofs will be required to sustain this claim in the future.

Although the problem of stale data was remedied by a recent updating of the Ernst and Whinney re-port, Butler has not complied with the PUC's request for "more rigorous proofs."

We will affirm the PUC's order in this respect.

### Freeport's Management Service Fees

Freeport, like Butler, is a wholly owned subsidiary of GWC and the beneficiary of management and ser-vice functions performed by GWM&S and IUIMC. For the test year ending December 31, 1981, GWM&S charged Freeport $10,484 for management services, an estimated $3,505 of which represents Freeport's share of the fee charged by IUIMC. The PUC denied Freeport recovery of IUIMC portion of the manage-ment fee charged by GWM&S for the same reason given Butler.

Freeport maintains that its claim for the IUIMC fee is different from Butler's because there was a written contract between GWM&S and IUIMC in ex-istence when the record was made in its case. The contract merely describes the services to be provided by IUIMC to GWM&S for the operating subsidiaries for a fee of $865,000. But this does not meet the re-quirement of 66 Pa. C. S. §2107 that payments to an

affiliate for services may not be allowed unless proof of the cost to the affiliated interest of rendering the service is submitted.

We will affirm the PUC's order in this respect.

ORDER IN 1018 C.D. 1982 AND 1170 C.D. 1982

AND Now, this 12th day of March, 1984, the order of the Pennsylvania Public Utility Commission dated May 6, 1982 is reversed insofar as it denies Butler Township Water Company full allowance of its claim for current rate case expenses in the amount of $37,-989; in all other respects the order is affirmed. The record is remanded for the adjustment of annual revenues made necessary by this order. Jurisdiction is relinquished.

ORDER IN 70 C.D. 1983

AND Now, this 12th day of March, 1984, the order of the Pennsylvania Public Utility Commission dated December 3, 1982 is reversed insofar as it denies Freeport Water Company full allowance of its claim for current rate case expenses in the amount of $37,-989; in all other respects the order is affirmed. The record is remanded for the adjustment of annual revenues made necessary by this order. Jurisdiction is relinquished.