556 A.2d 470

George Cup et al., Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

Argued October 5, 1988, before Judges CRAIG, DOYLE, BARRY, COLINS, PALLADINO and SMITH.

*John R. Luke*, with him, *William D. Coholan, Grogan, Graffam, McGinley & Lucchino, P.C.*, for petitioners.

*Kathryn G. Sophy*, Assistant Counsel, with her, *Bohdan R. Pankiw*, Deputy Chief Counsel, and *Daniel P. Delaney*, Chief Counsel, for respondent.

*D. Mark Thomas*, with him, *Patricia Armstrong*, for Lake Latonka Water Company, intervenor.

OPINION BY JUDGE COLINS, March 20, 1989:

George Cup and various other property owners (petitioners)[1] in the Lake Latonka resort community peti-

---

[1] The other property owners involved in this matter are: Mr. and Mrs. Mike Parimuha, James and Rose Fellin, Dominic and Genevieve Paparella, Earl L. Seskey, and William and Patricia Rieg.

tion for review of an order of the Pennsylvania Public Utility Commission (Commission) entered January 28, 1988, which dismissed the complaints against the rate structure of the Lake Latonka Water Company (Company).[2] We vacate and remand.

Lake Latonka resort community is comprised of 1,540 building lots of which 355 contain structures. The current owners of the Company are Walter and Joan Dluback who purchased the utility in 1969 and upgraded the water system. Water service is now available for both the developed, as well as the undeveloped lots. When the Dlubacks purchased the Company, they continued to charge a customary $5.00 per month fee to owners of lots without structures. This dispute arose when the Dlubacks began to charge $5.00 per month for each undeveloped lot as opposed to $5.00 per month for each owner of undeveloped lots. The rate for lots with structures is $8.10 per month. Petitioners in this matter are all owners of numerous undeveloped lots and sought relief from the imposition of the per lot charges.

The petitioners filed an action in the Court of Common Pleas of Mercer County which, on January 25, 1982, and March 1, 1982, ruled that the Company was precluded from collecting the $5.00 per undeveloped lot charge. The trial court based its decision on the language in the petitioners' deeds, as well as the Company's tariff language. On December 2, 1983, the Superior Court, in a per curiam order,[3] affirmed the trial court's decision that the deed language and the Company's tariff did not provide for a ready to serve charge.

---

[2] The Lake Latonka Water Company has been granted intervenor status in this matter.

[3] *Lake Latonka Water v. Morrison*, 322 Pa. Superior Ct. 565, 469 A.2d 281 (1983).

Prior to the Superior Court's decision, the Company had filed with the Commission Supplement No. 7 to its tariff proposing an almost 82% increase in rates which would have generated over $75,000.00 in additional revenue. The Commission denied this increase on December 10, 1982, but in an option order suggested that the Company submit an alternate tariff supplement which would increase revenues by only $4,000.00. In this December 10, 1982 order, the Commission suggested a $4.35 charge for undeveloped lots.

The Company, on December 28, 1982, filed Supplement No. 9 to its tariff incorporating the $4.35 charge suggested by the Commission. Subsequently, the previously-mentioned Superior Court per curiam order and memorandum opinion were filed holding that the Company's tariff did not contain language providing for a ready to serve charge.

In response to the Superior Court's decision, the Company, on February 2, 1984, filed Supplement No. 10 to its tariff seeking to clarify the language of Supplement No. 9 pertaining to the per lot charges for both developed and undeveloped lots. Supplement No. 10 to the Company's tariff states:

A minimum charge of $4.35 per month per lot shall be payable by the owner of each lot which is located in the service territory of the Company.

A minimum charge of $8.10 per month per lot shall be payable by the owner of each lot which is located within the service territory of the Company and upon which a structure has been erected. Such charge shall be payable irrespective of the quantity of water used.

Supplement No. 9 to the Company's tariff stated:

The minimum monthly charge for water service to each domestic and commercial customer shall

be $4.35 per lot without dwelling, $8.10 per lot with dwellings, $20.00 per month for restaurant and $15.00 per month for the Marina. An additional charge for swimming pools with a 2,000 gallon or more capacity shall be made at the rate of $1.80 per M. gallon of capacity.

The petitioners took issue with Supplement No. 10 and filed complaints with the Commission. The Commission's order entered April 12, 1984, approved Supplement No. 10. This order was entered without prejudice to any of the complaints that the petitioners had filed to Supplement No. 10.

After a July 20, 1984, prehearing conference on the petitioners' complaints to Supplement No. 10, an Administrative Law Judge (ALJ)[4] entered an order on September 20, 1984, stating that the Company need not relitigate the entire case, but had the burden of proving the appropriateness of the $4.35 charge for undeveloped lots. On December 19, 1984, the ALJ certified to the Commission the question of what the Company's burden of proof would be with respect to the petitioners' complaints to Supplement No. 10. The Commission responded on December 6, 1985, that the petitioners' complaints were limited to the rate issue and that the Company had the burden of demonstrating the reasonableness and appropriateness of the undeveloped lot charge.

On December 4, 1987, an ALJ, in his recommended order, determined the Company had met its burden and dismissed the complaints. After petitioners' exceptions to the ALJ's decision were denied, the Commission, by order dated January 28, 1988, adopted the ALJ's decision

---

[4] This matter was originally assigned to ALJ JOHN K. CLEMENTS. Upon his death, this matter was reassigned to ALJ ROBERT MEEHAN who entered a recusal order reassigning the matter to ALJ MICHAEL A. NEMEC.

that the rates were reasonable and dismissed the petitioners' complaints. This appeal follows.

Our scope of review in a rate-making case is limited to determining whether constitutional rights have been violated, an error of law has been committed, or whether the findings of fact are unsupported by substantial evidence. *Brockway Glass Co. v. Pennsylvania Public Utility Commission*, 63 Pa. Commonwealth Ct. 238, 437 A.2d 1067 (1981). Public utility rates are required to be just and reasonable and where a customer is heard to complain concerning a proposed change in rate, the burden of proof is upon the public utility to show the proposed rate is just and reasonable; where the complaint involves an existing rate, however, the burden falls upon the customer to prove that the charge is no longer reasonable.

The petitioners argue that the Commission erred in granting the Company's supplemental tariff because there is no evidence of record that sustains the Company's burden of proving the reasonableness of the tariff. To support this contention, the petitioners draw this Court's attention to the ALJ's decision which, in numerous places, contains language to the effect that the Company did not introduce any evidence regarding the reasonableness or appropriateness of the charges for each undeveloped lot. The petitioners argue that the ALJ's decision, adopted by the Commission, was speculative in nature and further direct this Court's attention to page 28 of the ALJ's decision which states: "Unfortunately, any calculations or methodology utilized by this Commission in arriving at the rate structure are not present in this record." Basically, the petitioners argue that the Company did not produce evidence regarding a reasonable or appropriate revenue level or rate structure and that this rate was based on mere conjecture.

The Commission and the Company attempt to counter the petitioners' argument by stating that the rate structure approved by the Commission is based on substantial evidence and sound regulatory policy. They argue that since Supplement No. 10 was approved on April 12, 1984, we are dealing with an existing rate and not an increase in rates and, therefore, the burden[5] falls on the consumer to prove that this $4.35 per lot charge is unreasonable. *Brockway Glass.*

Assuming arguendo that this matter concerns an existing rate and not a rate increase, we feel that the petitioners have satisfied their burden. The record reflects that the lake is in a horrible ecological condition and a number of the lots in question cannot be developed. Some of these lots have failed repeated percolation tests. Additionally, some of the lots in question are totally submerged, thus, rendering development economically impractical.

---

[5] Section 332(a) of the Public Utility Code (Code) states:
Burden of Proof.—Except as may be otherwise provided in section 315 (relating to burden of proof) or other provisions of this part or other relevant statute, the proponent of a rule or order has the burden of proof.
66 Pa. C. S. §332(a).
Section 315(a) of the Code states:
(a) Reasonableness of rates.—In any proceeding upon the motion of the commission, involving any proposed or existing rate of any public utility, *or in any proceedings upon complaint involving any proposed increase in rates, the burden of proof to show that the rate involved is just and reasonable shall be upon the public utility*. The commission shall give to the hearing and decision of any such proceeding preference over all other proceedings, and decide the same as speedily as possible. (Emphasis added.)
66 Pa. C. S. §315(a).

However, we consider this matter as a customer complaint against a proposed rate increase,[6] and, therefore, the burden lies with the Company to prove the reasonableness of the rate. We agree that the Commission has the expertise to establish rates and, further, that this power allows for flexibility. *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission*, 47 Pa. Commonwealth Ct. 512, 409 A.2d 446 (1979). We do not, however, agree that the revenue level approved in this matter was within the parameters of reasonableness. After reviewing the record, we fail to see how this rate structure is reasonable. The ALJ himself stated: "Unfortunately, any calculations or methodology utilized by this Commission in arriving at the rate structure are not present in this record." Yet, both the ALJ and the Commission saw fit to dismiss the petitioners' complaint.

The Commission stresses that it is permitted under Section 1305 of the Code, 66 Pa. C. S. §1305, to provide for ready to serve charges. The basis for such a charge is to provide adequate and continuous service. Nevertheless, it is not reasonable to collect such a charge when, in fact, the record does not establish the basis for such a charge.

Therefore, we must vacate the Commission's order dated January 28, 1988. Furthermore, this matter is to be remanded to the Commission for an appropriate finding of what constitutes a reasonable rate for an undeveloped lot, because there is no evidence in the record to reflect the basis for the Commission's calculations. *See generally National Fuel Gas Distribution Corp. v. Pennsylvania Public Utility Commission*, 81 Pa. Commonwealth Ct. 148, 473 A.2d 1109 (1984); *York Water Co. v. Pennsylva-*

---

[6] The Commission approved the rate in question and specifically held that this would in no way prejudice the lot owners' complaints concerning the water rates.

*nia Public Utility Commission,* 51 Pa. Commonwealth Ct. 61, 414 A.2d 138 (1980).

Accordingly, the order of the Commission is vacated and this matter remanded for disposition consistent with the foregoing opinion.

ORDER

AND NOW, this 20th day of March, 1989, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is vacated and this matter is remanded to the Commission for a determination of what constitutes a just and reasonable rate consistent with this opinion.

Jurisdiction relinquished.

Judge MCGINLEY did not participate in the decision of this case.