570 A.2d 149

**ALLEGHENY CENTER ASSOCIATES, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1989.

Decided Feb. 16, 1990.

James H. Norris, with him, William B. Mallin, Eckert, Seamans, Cherin & Mellott, and J. Gary Kosinski, Pittsburgh, for petitioner.

John A. Levin, Asst. Counsel, Camp Hill, with him, Bohdan R. Pankiw, Deputy Chief Counsel, and John F. Povilaitis, Chief Counsel, Harrisburg, for respondent.

Michael P. Kerrigan, Harrisburg, for intervenor, Allegheny Gen. Hosp.

Charles E. Thomas, Jr., with him, Thomas T. Niesen, Harrisburg, Lawrence B. Nydes and Elliot M. Gill, Pittsburgh, Thomas & Thomas, Harrisburg, for intervenor, Equitable Gas–Energy Co.

Before CRUMLISH, Jr., President Judge, and CRAIG, BARRY, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

## OPINION

CRUMLISH, Jr., President Judge.

Allegheny Center Associates (Allegheny Center) appeals a Public Utility Commission (Commission) order allowing Equitable Gas–Energy Company (Equitable) to increase its consumer steam and chilled water rates. We affirm.

Equitable, an intervenor in this appeal, filed a tariff supplement proposing rate changes calculated to produce $933,803 in additional annual operating revenues. Allegheny Center, a shopping center, office and residential complex operator, and several other entities including the intervenor Allegheny General Hospital (Hospital), filed complaints against the proposed rate increase. The Commission commenced an investigation and held evidentiary hearings.

Administrative Law Judge (ALJ) Robert P. Meehan issued a recommended decision, finding Equitable's rate filing was unjust and unreasonable and recommending in part that the utility file a new tariff or tariff supplement seeking a smaller increase. The parties filed exceptions to the ALJ's decision. The Commission ordered Equitable to file a new tariff calculated to allow an additional $406,232 in annual operating revenues. Equitable filed a revised tariff in compliance with the Commission's order. The Commission, by separate order, approved this revised tariff and permitted it to become effective.

Allegheny Center filed appeals from both the Commission's initial order and the latter "compliance" order, which have been consolidated for our review. The Commission moves to quash the latter appeal as unnecessary, which motion we will dispose of first.

### No. 379 C.D.1989

■ The Commission contends that Allegheny Center is not aggrieved by any aspect of this compliance order, which merely approved the previously ordered revised tariff. The Commission asserts that allowing parties to appeal routinely from such orders creates confusion over the finality of Commission orders and the possibility for improper evidentiary submissions. Equitable responds that the compliance order did more than summarily approve the revised tariff; rather, it expressly accepted the precise terms of that tariff, terminated the investigation and directed that the file be closed.

While we appreciate Allegheny Center's efforts to perfect its appeal and avoid possible procedural difficulties, it has not alleged any errors specific to the compliance order or distinguishable from the alleged errors of the Commission's original tariff order. As such, Allegheny Center has not been aggrieved by the latter compliance order and thus does not have standing to appeal therefrom.[1] Thus, we will

---

1. *See Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 122 Pa.Commonwealth Ct. 445, 552 A.2d 1135 (1989), where the

quash Allegheny Center's appeal docketed at No. 379 C.D. 1989 and address its appeal from the original tariff order at No. 2900 C.D.1988.

### No. 2900 C.D.1988

Allegheny Center and the intervenor Hospital assert several errors in their appeal of the Commission's original tariff order. They complain that the Commission (1) did not provide the utility's customers any remedy after finding Equitable had violated its statutory duty under Section 1501 of the Public Utility Code (Code), 66 Pa.C.S. § 1501; (2) failed to issue findings and legal conclusions on essential issues; (3) arbitrarily and capriciously approved a rate increase even though Equitable failed to demonstrate actual service demand and thus establish a basis for revenue increase; and (4) improperly approved Equitable's litigation expenses as just and reasonable. We shall address these contentions seriatim.

The evidence adduced at hearing indicated that Equitable experienced "line losses" of steam and chilled water of 25.5 percent and 25.77 percent, respectively, during the relevant test year. The ALJ attributed the level of these losses in part to inaccuracies in the utility's metering system. After summarizing the testimony of Equitable's expert witnesses that such losses are within expected levels and reasonable in light of the plant design and operations, the Commission explicitly rejected the ALJ's finding of managerial and operational inefficiency and declined to adopt the recommended adjustment to Equitable's return on equity. The Commission has the authority to determine the weight and credibility of evidence, *Metropolitan Edison Co. v. Pennsylvania Public Utility Commission*, 62 Pa.Commonwealth Ct. 460, 437 A.2d 76 (1981). If the Commission's findings are supported by substantial evidence, as they are

Commission's motion to quash the utility's appeal of a subsequent compliance letter order was denied; the Commission's compliance order in that case, which approved a forced filing with which the utility disagreed, was held to be an order having a real effect, adverse to the utility.

here, we must affirm. *City of Pittsburgh v. Pennsylvania Public Utility Commission,* 106 Pa. Commonwealth Ct. 437, 526 A.2d 1243 (1987).

The thrust of Allegheny Center and the Hospital's initial contention centers on the Commission's discussion of Equitable's reluctance to improve its metering efficiency. The Commission stated that Equitable's "attitude seems to be inconsistent within [its] statutory duty under Section 1501 of the Public Utility Code." [2] Commission op. at 17. Petitioners interpret this statement as a binding legal conclusion mandating a sanction under the Code. This is simply not so. The Commission, in its discussion of expenses associated with line loss clearly and unambiguously declared that Equitable's "line losses" were reasonable and not the result of managerial or operational imprudence. This is merely obiter dicta. The petitioners' assertion of reversible error on this issue is without merit.

Petitioners' contention that the Commission's conclusions on "line losses" were not sufficiently specific to permit appellate review likewise fails. Section 703(e) of the Code, 66 Pa.C.S. § 703(e), requires that the Commission's

2. Section 1501 of the Code, often referred to as the "character of service" provision, reads as follows:

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission. Subject to the provisions of this part and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service. Any public utility service being furnished or rendered by a municipal corporation beyond its corporate limits shall be subject to regulation and control by the commission as to service and extensions, with the same force and in like manner as if such service were rendered by a public utility. The commission shall have sole and exclusive jurisdiction to promulgate rules and regulations for the allocation of natural or artificial gas supply by a public utility.

66 Pa.C.S. § 1501.

findings be in sufficient detail to allow a reviewing court to determine the controverted question presented by the proceeding. Where, as here, the Commission is presented with a choice of actions, each fully developed in the record, its decision is an implicit acceptance of one and a rejection of the other. *Barasch v. Pennsylvania Public Utility Commission*, 101 Pa. Commonwealth Ct. 76, 515 A.2d 651 (1986). There is no requirement that the Commission discuss each and every contention raised by the parties. *Barasch.* Our review of the Commission's decision satisfies us that it adequately addressed the issues raised during the underlying proceeding.

 Petitioners further complain that the Commission arbitrarily approved a rate increase for Equitable when the record contains no actual demand data on which to base the utility's revenue calculations. Again, we disagree.

Equitable's tariff contains a determination of demand clause which provides that the steam and chilled water demand for each customer shall be *the higher of* its actual peak demand or its contract demand. Equitable's revenue calculations were indeed based solely on contractual demand. Use of contractual demand ensures that customers pay fixed costs; it is a common regulatory practice and has been approved by this Court. *Philadelphia Suburban Transportation Co. v. Pennsylvania Public Utility Commission*, 3 Pa. Commonwealth Ct. 184, 281 A.2d 179 (1971). Since, under the terms of the tariff, petitioners are required to pay certain minimum contractual demand charges, we do not perceive error in the use of these minimums as the basis for revised revenue calculations. This is particularly so where, as here, no data of actual demand has been submitted by any of the parties. Even if evidence of actual demand were present, under the terms of the tariff, such data could only serve to create a higher revenue requirement. We therefore agree with the Commission's conclusion that Equitable's method of calculating its proposed rates does not violate the Code.

■ Lastly, petitioners challenge the Commission's approval of Equitable's claimed litigation expenses of $353,-055. Petitioners contend that Equitable failed to sustain its burden of proving that these expenses were just and reasonable.

In the underlying proceeding, Equitable was advised by Commission order dated April 13, 1988, setting the matter for investigation and hearing, that the Commission was "specifically concerned about the following area: * * * Legal Fees—[Allegheny Center] Lawsuit." Equitable thereafter claimed litigation expenses in two schedules submitted in conjunction with an exhibit containing various corrections and updates to the original filing. Equitable Exhibits 1A and 1B. The petitioners failed to question or challenge these expenses at the hearings and the record was later closed. Instead, the Hospital's proposal to adjust this expense was first contained in its main brief. The ALJ noted that this was the first time a party had contested the litigation expense and thus dismissed the Hospital's adjustment as untimely. The Commission adopted the ALJ's recommendation and found Equitable's claimed expense reasonable. We cannot say that the Commission erred in its determination.

■ Litigation expenses are a legitimate cost of doing business and may be included in rate base calculations as a prudently incurred operating expense. *See Butler Township Water Co. v. Pennsylvania Public Utility Commission*, 81 Pa. Commonwealth Ct. 40, 473 A.2d 219 (1984). While it is axiomatic that a utility has the burden of proving the justness and reasonableness of its proposed rates, it cannot be called upon to account for every action absent prior notice that such action is to be challenged. *Central Maine Power Co. v. Public Utilities Commission*, 405 A.2d 153, 185 (Me.1979). Petitioners thus cannot now challenge what on its face is an appropriate operating expense claim where they failed to produce any contrary evidence or argument in the underlying proceeding.

Accordingly, the Commission's order is affirmed.

## ORDER

, The appeal of petitioner Allegheny Center Associates from Commission order Nos. R–880941, R–880941C001—C005 dated February 1, 1989, at No. 379 C.D.1989, is quashed.

The Public Utility Commission order Nos. R–880941, R–880941C001—C005 dated November 14, 1988, at No. 2900 C.D.1988, is affirmed.