**Irwin A. POPOWSKY, Consumer Advocate, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

**LP WATER AND SEWER COMPANY, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 1995.

Decided Feb. 15, 1996.

Publication Ordered April 11, 1996.

---

Christine Maloni Hoover, Assistant Consumer Advocate, and Daniel M. Campbell, for Petitioner, Irwin A. Popowsky.

John A. Levin, Assistant Counsel, for Respondent.

Before DOYLE, McGINLEY, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

This is a consolidated appeal by Irwin A. Popowsky of the Office of Consumer Advocate (OCA) and LP Water and Sewer Company–Sewer Division (LP) from the July 14, 1993 order of Pennsylvania Utility Commission (PUC) which, *inter alia,:* (1) denied LP's entire claim for management expenses; (2) granted LP expenses of $73,152 for its rate case; and (3) granted LP an operating ratio of 5% with regard to LP's Sewer Division.

LP, a public utility, provides sewer and water services to approximately 3,300 customers in Middle Smithfield, Monroe County and Lehman Township, Pike County, located in the Pocono Mountains of Pennsylvania. LP is unusual in that it leases all of its facility from its parent company, the Lehman Pike Development Corporation (LPDC).[1]

On October 9, 1992, LP filed Supplement No. 4 to Tariff–Sewer Pa. PUC No. 1, to be effective December 17, 1992, requesting an increase in its annual revenues of 128% or $318,000 based upon a future test year to end June 13, 1993. At issue here are LP's request for managerial expenses of $27,001, rate case expenses of $112,250, and LP's request for an operating ratio of 10%.[2] On May 19, 1993, the Administrative Law Judge

(ALJ) recommended that a portion of LP's requested increases be allowed.

OCA, the PUC's Office of Trial Staff (OTS) and LP filed Exceptions to the ALJ's recommended order. The PUC entered an order on July 14, 1993, allowing LP to raise its rates from $241,091 to $465,993, an increase of 93% or $224,902. Specifically, the PUC disallowed LP's entire managerial expense claims, allowed only $73,152 for LP's rate case expense, and permitted an operating ratio of 5% of its total operating expenses.

■ OCA filed a petition for review with this Court on August 13, 1993 and LP intervened as a party with the respondent, PUC. LP also filed a cross petition, and OCA and Richard Sanderman intervened in that appeal as parties aligned with respondent, PUC.[3] This Court consolidated the two appeals.

■ In its appeal before this Court,[4] LP argues that the PUC erred: (1) in disallowing its entire expense claim for managerial services; (2) in allowing as an expense only a portion of the $112,250 claimed as the estimated cost of its rate case; and (3) in granting only an income rate of 5% of LP's operating expense. OCA, in its appeal, argues that the PUC erred in utilizing an operating ratio in setting LP's rates, alleging that the Public Utility Code (Code)[5] does not permit the use of any income rate of operating expenses for utilities other than common carriers.

### MANAGERIAL EXPENSES

■ LP contends that its claim for $27,-001[6] for managerial service fees is supported by substantial evidence, and that the PUC

---

1. LPDC is a real estate development company.

2. In response to LP's rate proposal 128 complaints were filed.

3. Sanderman in his brief to this Court alleges that LP fraudulently misrepresented its real estate tax bills and its bad debts. However, these issues were not raised by LP in its petition for review, and since Sanderman did not file a cross appeal raising these issues, we need not address them.

4. Our scope of review is to determine whether constitutional rights have been violated, whether an error of law has been committed or whether the findings of fact are supported by substantial

evidence. *Cup v. Pennsylvania Public Utility Commission,* 124 Pa.Cmwlth. 291, 556 A.2d 470 (1989).

5. Section 1311(d) of the Code, 66 Pa.C.S. § 1311(d).

6. The request of $27,001 for managerial expenses represents one half of the total ($54,002) charged by LPDC to LP for the managerial services LPDC provided. LP divided the total charge equally between the sewer division and water division. (Reproduced Record (R.R.) at 156a–157a.)

erred in denying its entire claim for these expenses.

■ A public utility requesting a rate increase has the burden of showing that the rate requested is just and reasonable. *Cup v. Pennsylvania Public Utility Commission,* 124 Pa.Cmwlth. 291, 556 A.2d 470 (1989); Section 315(a) of the Public Utility Code (Code), 66 Pa.C.S. § 315(a); Section 2102(c) of the Code, 66 Pa.C.S. § 2102(c). Additionally, pursuant to Section 2106 of the Code, 66 Pa.C.S. § 2106, the PUC:

> [M]ay disallow, in whole or in part, any payment or compensation to an affiliated interest for any services rendered or property or service furnished, or any property, right, or thing received by such public utility ... unless such public utility shall establish the reasonableness thereof. In such proceeding no payment shall be approved or allowed by the commission, in whole or in part, until satisfactory proof is submitted to the commission of the cost to the affiliated interest of rendering the service.... No proof shall be satisfactory, within the meaning of the foregoing sentence, unless it includes the original (or verified copies) of the relevant cost records and other relevant accounts....

The managerial service expenses claimed were: (1) executive general management; (2) operations management; (3) customer billing; and (4) accounting. Although there is no dispute that some managerial services were provided by LPDC, the record is devoid of time records and wage information concerning managerial personnel. The PUC found, and our review confirms, that LP was afforded the opportunity to present actual evidence of the managerial expenses for the

sewer division at the hearing but neglected to do so, thereby failing to prove that the expenses were reasonable and just. Therefore, we affirm the judgment of the PUC and its finding that LP did not meet its burden of proof by failing to sufficiently prove the value of the managerial services. *Butler Township Water Company v. Pennsylvania Public Utility Commission,* 81 Pa.Cmwlth. 40, 473 A.2d 219 (1984).[7]

### RATE CASE EXPENSES

· LP claimed $112,250 in expenses related to the cost of presenting its rate case to the PUC (based upon an estimate), and LP further requested that such expenses be normalized over a one year period since it intends to institute another rate filing in one year. The estimated expenses included the cost for consultants ($35,000), attorney's fees ($65,000), management services ($10,000) and miscellaneous expenses ($2,250). (Notes of Testimony (N.T.) at 45; R.R. at 402(a).)

■ The PUC, in accepting the ALJ's recommendation, reduced LP's rate case expense to $73,152, a reduction of $39,098 from LP's requested amount. This figure was based upon LP's rate case expense of its initial application before the PUC which involved both its water and sewer divisions; that case had been fully litigated.[8] The PUC also normalized[9] the expense over seventeen and one-half (17½) months based upon the rate effective period of January 27, 1992 to July 17, 1993 of its initial and only prior rate proceeding.

On appeal, LP argues that the PUC erred in following the ALJ's recommendation, because LP's rate case claim was reasonable and supported by substantial evidence,[10] and

---

7. LP argues that time sheets were provided to OCA; however, the fact is inconsequential, since the evidence was not entered into the record and the ALJ and Commission were not privy to the records.

8. *LP Water and Sewer Company v. Pennsylvania Public Utility Commission,* (No. 435 C.D.1992, filed April 10, 1995).

9. "Normalization of an expense is the name given to the adjustment of an item of recurring expense where the amount of the expense incurred in the test year is greater or less than that

which the utility may be expected to incur annually during an estimated life of new rates." *Butler Township,* 473 A.2d at 222.

10. LP also argues that its rate expense was reduced as a form of "punishment" for its aggressive legal tactics. Contrary to LP's contention, it was not being "punished" for over-zealous behavior, but it was found that its rate case activities and expenses were unreasonable, and therefore, the PUC would not require LP's customers to bear the costs of its unreasonable expenditures.

that the expense should be normalized over one year, since it plans to file another rate case in a year.

 We hold that substantial evidence supports the reduction of LP's rate case expense claim to $73,152 since LP failed to demonstrate that its requested rate expenses ($112,250) were reasonable.

 Only prudently incurred expenses are includable in rate case expense claims, *Allegheny Center Associates v. Pennsylvania Public Utility Commission*, 131 Pa.Cmwlth. 352, 570 A.2d 149 (1990), and it is the burden of the public utility to prove that the rate case expenses incurred are just and reasonable. *Cup.* It is within the discretion of the PUC to exclude expenses as unreasonable. *Allegheny Center Associates.*

In adopting the reasoning of the ALJ, the PUC concluded that the expenses claimed were unreasonable. The ALJ found the expenses to be unreasonable, in part, because LP's attorney's actions were excessive,[11] LP's request for a rate case expense exceeded over 30% of the total increased revenues sought, and most important, LP's previous rate case, which involved both the sewer and water divisions only incurred costs of $73,-152, whereas the instant case involves only the sewer division. Moreover, LP's previous rate case was a more extensive and time-consuming proceeding. Thus, the PUC, in accepting the ALJ's recommendation, determined that granting LP an expense of almost double of what was granted in the previous case was unreasonable.

 LP has failed to demonstrate that its expenses were reasonable and prudently incurred, and a reduction of LP's rate case expense to $73,152 is supported by an examination of the record. OTS' witness, Thomas P. Maher, a Fixed Utility Financial Analyst in the office of OTS, who was found credible, testified that LP previously incurred actual costs of $73,152 in its prior year's fully litigated application case.[12] (Direct Testimony of Maher at 4–5; R.R. at 363a.) Additionally, LP's witness, Dennis Kalbarczyk, testified that the rate case expense of its initial application case was only $73,152. (N.T. at 24; R.R. at 397a.) Accordingly, we find no error in PUC's reduction of LP's rate case expense claim.

 As to the normalization period, the length of the period fixed for the recovery of expenses incurred is within the discretion and expertise of the PUC. *Blue Mountain Consolidation Water Co. v. Pennsylvania Public Utility Commission*, 57 Pa.Cmwlth. 363, 426 A.2d 724 (1981). Moreover, the period of normalization is determined by examining the utility's **actual** historical rate filings, not upon the utility's intentions. *Pennsylvania Public Utility Commission v. Borough of Media Water Works*, 72 Pa. PUC 144 (1990). Here, the time period in between rate case filings by LP is seventeen and one-half months; which represents the frequency of LP's previous rate filing. Therefore, normalizing the costs over that time period is supported by substantial evidence.

### OPERATING EXPENSE

LP made a claim for an operating expense requesting a rate increase of 10% of its total operating expense, but the PUC only granted a rate of 5% of the total operating expenses. OCA, in its petition for review, argues that the PUC does not have the authority to utilize an operating ratio as a means of determining LP's rates because the Code does not prescribe such a method.[13] LP, in its petition for review, argues that a 10% ratio is supported by substantial evidence and that a 5% rate is arbitrary and confiscatory.

---

11. LP's attorney filed more than 100 separate motions to dismiss complaints of individual rate payers, and sent intimidating letters to 127 complainants, along with "withdrawal of complaint" forms. (ALJ's Recommended Decision at 39; R.R. at 43a.)

12. The PUC has the authority to make credibility determinations and weigh the evidence. *Alleghe-*

*ny Center Associates.* Where the findings are supported by substantial evidence, this Court must affirm. *Id.*

13. Sanderman argues that no operating ratio should be used because it would promote waste by LP since as its expenses rise so would its return.

### OCA's Position

 OCA argues that the Code proscribes the use of an operating ratio as a method for setting a utility's rate. As support for its contention, OCA cites to Section 1311(d) of the Code, which states in part:

> **Common carriers.**—In fixing any rate of a public utility engaged exclusively as a common carrier by motor vehicle, the commission may, in lieu of other standards established by law, fix the fair return by relating the fair and reasonable operating expenses, depreciation, taxes and other costs of furnishing service to operating revenues.

66 Pa.C.S. § 1311(d). OCA interprets this section to hold that **only** common carriers can utilize an operating ratio. However, that analysis is an incorrect reading of the statute. The statute only provides that public utilities which are engaged exclusively as common carriers may use an operating ratio. Section 1311(d) does not preclude the PUC from using such a ratio to set the rates of other public utilities.

 Further, the intent of the Legislature is to grant the PUC full powers in regulating services and rates of public utilities. Section 501 of the Code, 66 Pa.C.S. § 501; *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 147 Pa. Cmwlth. 6, 607 A.2d 1132, 1135 (1992) ("[t]he PUC is granted a wide range of discretion as to the extent and type of adjustments it makes to a utilities rate base and these discretionary findings must be accepted unless they are totally without support in the record"), *petition for allowance of appeal denied*, 539 Pa. 661, 651 A.2d 547 (1993).

Section 1308 of the Code states in part:

> **Determination.**—If, after such hearing, the commission finds any such rate to be unjust or unreasonable, or in anywise in violation of law, the commission shall determine the just and reasonable rate to be charged or applied by the public utility for the service in question, and shall fix the same by order to be served upon the public utility....

66 Pa.C.S. § 1308(c).

 The Code is silent as to what particular method the PUC must implement at arriving at a reasonable rate, and,

> [a]s long as there is a rational basis for the PUC's methodology, *such decisions are left entirely up to the discretion of the PUC* which, using its expertise, is the only one which can properly determine which method is the most accurate given the particular circumstances of the case and economic climate.

*West Penn*, 607 A.2d at 1135 (emphasis added).

 The PUC elected to use an operating ratio in the instant case based upon the accepted expert testimony of LP's witness, Harold C. Blatt, who was the sole witness to address the use of the operating ratio. Blatt cogently testified that an operating ratio is a reasonable method in setting a rate for utilities which due to their size or other reasons do not have a rate base [14] upon which a rate may be fashioned. He testified that:

> the operating ratio is applied to a utility's operating expenses, adjusted to eliminate depreciation and in certain cases, income taxes. The level of operating ratio to be applied may vary based upon a number of circumstances.... Here a utility has minimal or no annual allowance for depreciation or other available reserves, the operating ratio provides a cushion for extraordinary operating expenses, maintenance and repair normally financed through depreciation expense and the variability and risks of erosion of operating revenue and inflation of operating expenses.

(Direct Testimony of Blatt at 8–9; R.R. 115a–16a.)

Based on Blatts' testimony and other relevant evidence introduced at the hearing, the PUC concluded that LP does not have a rate base for the PUC to calculate a reasonable

---

**14.** A rate base for a public utility involves examining the original costs of each asset of the utility with a life of more than one year, less depreciation, to arrive at the fair value of the utility's property. Section 102 of the Code, 66 Pa.C.S. § 102. From that number the PUC may adopt a fair return.

and fair rate. No rate base exists because the property is owned by LPDC; thus, LP has no property assets. Accordingly, PUC did not err in utilizing an operating ratio, since it is within the discretion of the PUC and its expertise.

### LP's Position

■ With regard to the reasonableness of the 5% operating rate, again it is the burden of the utility to demonstrate the reasonableness of its requested rate. *Cup.* Although the PUC accepted the testimony of Blatt, LP's witness, as credible, the PUC held that Blatt's testimony did not provide sufficient support for granting LP a 10% operating rate. No evidence was produced that demonstrated that a 10% operating rate is needed in order to insure the viability of the utility and a reasonable rate of return. *Metropolitan Edison Co. v. Pennsylvania Public Utility Commission,* 62 Pa.Cmwlth. 460, 437 A.2d 76 (1981) (the PUC has the duty to protect the public from unreasonable rates while insuring that a utility is permitted to charge rates which are sufficient to cover its costs and provide a reasonable rate of return).

■ The establishment of a rate structure is an administrative function peculiarly within the expertise of the PUC, and this Court will not reverse the decision of the PUC unless it is entirely without support. *West Penn.* The PUC, after examining all of the financial and operational records of LP, concluded that a 5% operating rate will adequately cover the costs of LP while providing a reasonable return. Therefore, we will defer to the PUC's determination that a 5% operating rate is reasonable.

Accordingly, the PUC's order is affirmed.

### ORDER

NOW, February 15, 1996, the order of the Pennsylvania Public Utility Commission in the above-captioned matters are hereby affirmed.