The York Water Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued September 12, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS, BLATT, DISALLE and CRAIG. Judges WILKINSON, JR. and MACPHAIL did not participate.

*W. Russel Hoerner,* with him *Michael W. Gang; Morgan, Lewis & Bockius; William H. Kain,* and *Kain, Brown, Roberts & Woodbury,* for petitioners.

*John A. Levin,* Assistant Counsel, with him *George M. Kashi,* Chief Counsel, for respondent.

OPINION BY JUDGE CRUMLISH, JR., April 28, 1980:

The York Water Company (York)[1] appeals here from an order of the Public Utility Commission

---

[1] York is a publicly-owned utility providing water service in York County, Pennsylvania, to a population in excess of 121,000, serving approximately 34,789 residential, commercial, industrial and public customers, of which 13,272 were metered and 21,517 were flat rate.

(PUC) which denied in part its request for rate increases. We affirm in part and remand in part.

On November 28, 1977, York filed Tariff Water-Pa. P.U.C. No. 13 proposing a January 27, 1978 addition to rates, designed to produce an increase of $1,680,054 in annual operating revenues based upon the level of operations at July 31, 1977, the end of the test year.

With the operation of the tariff automatically suspended, formal investigation ordered, and public hearings held, the Administrative Law Judge recommended that York be permitted to file tariff revisions providing annual operating revenues of $5,814,964, an increase of $964,338 over then-existing revenues, $715,716 less than proposed. Providing an income available for return of $1,827,000 after expenses, taxes and depreciation, the recommendation contemplates a fair value rate base at an original cost figure of $19,030,131 with a corresponding 9.6 percent rate of return.

In its final adjudication,[2] the PUC order finds a fair value rate base of $23,387,000 and a fair rate of return of 7.88 percent, providing income available for return in the amount of $1,843,000. This adjudication directs York to file tariff revisions, providing annual operating revenues of $5,862,355, an increase of $1,011,729, but $671,933 less than York's proposed figures.[3]

---

[2] Two formal complaints, from Intervenor St. Regis Paper Company and Colonial Square Developers, were filed to the new tariff. Also note that a third issue, involving the exclusion of an unamortized portion of the federal development credit as part of common equity capital, was withdrawn at argument.

[3] Our case law is replete with the proposition that public utilities are entitled to a fair return based upon the fair value of property used and useful for its public service. *Lower Paxton Township v. Pennsylvania Public Utility Commission*, 13 Pa. Commonwealth Ct. 135, 317 A.2d 917 (1974).

York now appeals the PUC's determinations with regard to fair value, fair rate of return and capital structure's cost of common equity capital[4] in that they are contrary to the record and principles of law, constitute an arbitrary and capricious denial of the constitutional rights of due process and protection from property confiscation,[5] and amount to a manifest abuse of discretion on the part of the PUC.

Our point of origin and responsibility thus begins with the PUC. Charged with considering all relevant information, determining the weighing of evidence, credibility of witnesses, and reliability of estimates and opinions, the Commission must make definite, consistent, detailed findings, so as to enable this Court to review the decision and respond to the questions raised on appeal.[6]

### FAIR VALUE

Preliminarily, the Court accepts the petitioner's submitted measures of value as uncontroverted evidence: (1) an original cost depreciated measure of

---

[4] York specifically draws attention to the figures charted below claiming that manipulation produced substantially the same result: Administrative Law

|  | Rate Base Fair Value | Rate of Return | Income Available for Return |
|---|---|---|---|
| Judge | $19,030,131 | 9.6% | $1,827,000 |
| Commission | $23,387,000 | 7.88% | $1,943,000 |
| Difference | +$4,356,869 | —1.72% | +$16,000 |

[5] We deem a disposition of the confiscation issue unnecessary at this time in that one of the underlying issues is remanded to the PUC for further consideration. *See Equitable Gas Co. v. Pennsylvania Public Utility Commission*, 45 Pa. Commonwealth Ct. 610, 612, 405 A.2d 1055, 1057 (1979).

[6] *See Pennsylvania Gas and Water Co. v. Pennsylvania Public Utility Commission*, 33 Pa. Commonwealth Ct. 143, 148 n. 4, 381 A.2d 996, 999 n. 4 (1977) ; *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co.*, 19 Pa. Commonwealth Ct. 214, 341 A.2d 239 (1975) ; and *Johnstown v. Pennsylvania Public Utility Commission*, 184 Pa. Superior Ct. 56, 133 A.2d 246 (1957).

value of $19,030,131; (2) a trended original cost depreciated measure of value of $59,185,120 at June 30, 1977 price levels; (3) a three-year average trended original cost measure of value of $54,535,532; and (4) a five-year average trended original cost measure of value of $49,293,748.

Petitioner forwards three arguments in opposition to the PUC's fair value decision: (1) the Commission gave no consideration to trended original cost measures of value by finding a fair value of $23,387,000 so close to the $19,030,131 original cost depreciated as to clearly indicate an inadequate determination; (2) the fair value determination which is 122.9% of net original cost is so close as to be indistinguishable from the ratio of 121% specifically held to be arbitrary in *Pennsylvania Gas and Water Co. v. Pennsylvania Public Utility Commission (P.G. & W. II)*, 33 Pa. Commonwealth Ct. 143, 381 A.2d 996 (1977); and (3) the prior Commission order, dated December 19, 1972, finding a fair value of $21,750,000, indicates the inadequacy of the present fair value determination of $23,387,000.

Historically, fair value was fixed at a numerical value near the average of original cost as the lower limit and trended original cost as the upper boundary. *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co. (P.G. & W. I)*, 19 Pa. Commonwealth Ct. 214, 341 A.2d 239 (1975); *Johnstown v. Pennsylvania Public Utility Commission*, 184 Pa. Superior Ct. 56, 133 A.2d 246 (1957). However, the recent Pennsylvania Supreme Court decision in *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co. (P.G. & W.)*, Pa. , A.2d (No. 35 May Term, 1978 & No. 278 January Term, 1978, filed February 1, 1980), has altered the course of public utility rate cases with respect to the fixation of fair value, and would seem to have functionally pre-

cluded a review and decision by this Court on the merits of the PUC's fair value finding. In continuing to accept "fair value" as the property valuation measure for rate making purposes, the Supreme Court clearly held that trended cost figures have little probative value, and found nothing that required they be accepted in whole or in part.

With reference to our scope of review,[7] the Court declared that so long as PUC estimated fair value falls within the extremes, original cost and trended original cost, then "the question is one of policy for the regulatory body concerning which the judicial branch is not warranted in interposing economic theories. Unless the PUC's decision does not bear a real and substantial relationship to the regulatory objects sought to be obtained by it, that judgment must prevail." *P.G. & W., supra,* slip op. at 11. Though we may disagree with the PUC's reasoning and may wish to remand for the disclosure of new, additional or more specific findings, this Court may not overturn a decision which falls within the requisite parameters. Therefore, we cannot say that the fair value finding does not bear a real and substantial relationship to the regulatory objects sought to be obtained and must accept the Commission's determination.

### FAIR RATE OF RETURN

York argues that the Commission's 7.88% fair rate of return finding is based upon an improper determination of the cost of common equity capital.

A degree of definitional background may be helpful. Fair rate of return is usually expressed as a percentage of the rate base fair value investment ratio,

---

[7] Our scope of review in PUC cases has always been limited to a determination of whether constitutional rights have been violated, an error of law committed, or its findings and conclusions are unsupported in the record by substantial evidence. *Id.*

representing profit to the utility owners in return for the use of property, its management, and operation in the public service. One of the most important factors in determining fair rate of return is overall "cost of capital," a percentage figure stemming from the debt, preferred, and common stock portions of the total capitalization scheme.[8] The problem in the case before us concerns the "cost of common equity capital," which is essentially that return in dollars required to induce investors to purchase the utility's common stock.[9] Though speculative, this element of capital structure provides the best estimation of what investors are likely to pay for a current issue of York's common stock.

The PUC's fair rate of return estimates are set forth in the following table, with York's claims of different percentages annexed in brackets:

| Type of Capital | Actual Capital Structure Ratio | Cost Rate | Weighted Cost Return Rate |
|---|---|---|---|
| Debt. | 48.2% | 5.62% | 2.7% |
| Common Equity | 51.8% | 10.0% [11.5%] | 5.18% [5.96%] |
| | 100.0% | 15.62% [17.12%] | 7.88% [8.66%] |

York's expert witness produced evidence and testimony which offered 11.5% as a fair estimate for cost

___

[8] Though the estimation of capital cost is basically a matter of discretionary judgment, the Commission is obliged to consider a variety of factors, including "the utility's financial structure, credit standing, dividends, interest, risks, regulatory lag, wasting assets, and any peculiar features of the utility involved." *Equitable Gas Co. v. Pennsylvania Public Utility Commission*, 45 Pa. Commonwealth Ct. 610, 617, 405 A.2d 1055, 1059 (1979).

[9] A cost of common equity capital estimate should take into account "the demands for the use of money, the growth in earnings expected by the investor, earning-price ratios, dividend yields, the marketing cost associated with raising common equity capital, and the earnings of comparable companies with similar risks." *Lower Paxton Township v. Pennsylvania Public Utility Commission*, 13 Pa. Commonwealth Ct. 135, 144, 317 A.2d 917, 922 (1974).

of common equity capital, with a corresponding fair return rate of 8.66%. York argues that its estimate is supported by the evidence, and that the Commission manipulated the figures to produce a preconceived rate result. After reviewing the Commission's order concerning the cost of common equity capital, including comparisons of adjusted earnings-price raios,[10] market price-book value ratios/earnings-book value ratios,[11] and discounted cash flow calculations,[12] we are unable to discern either supporting evidence or

---

[10] In evaluating cost of common equity capital, the Commission order specifically provides that "primary weight was given earnings-price ratios since these most directly indicate aggregate investor evaluation of a given level of earnings." A comparison of York's 11.8% adjusted earnings price ratios for 1976 and 11.7% for 1977 seems inconsistent with the final 10% Commission adjudication. P.U.C. Order, dated August 17, 1978, Table I, p. 5:

Adjusted Earnings-Price Ratios (Pa. P.U.C. Exhibit No. 1A, Schedules 1-3 Moody's Public Utility Manual, The Wall Street Journal.)

|  | 1972-1976 % | 1972 % | 1976 % | 1977 % |
|---|---|---|---|---|
| York Water Company | 11.0 | 9.3 | 11.8 | 11.7 |
| 13 Water Companies | 14.1 | 11.9 | 14.8 | 12.9 |
| 6 Water Companies | 14.7 | 12.7 | 15.0 | 14.5 |

[11] Market Price-Book Value Ratios/Earnings-Book Value Ratios (Pa. P.U.C. Exhibit No. 1A, Schedule 1-3), P.U.C. Order dated August 17, 1978, Table III, p. 6:

|  | 1972-1976 MP/BV-E/BV % | 1972 MP/BV-E/BV % | 1976 MP/BV-E/BV % | 1977 MP/BV-E/BV % |
|---|---|---|---|---|
| York Water Company | 16.4-11.5 | 138.5-11.7 | 99.5-10.6 | 98.4-10.4 |
| 13 Water Companies | 79.9-9.8 | 91.9-9.7 | 79.6-10.4 | 91.6-9.9 |
| 6 Water Companies | 68.8-8.9 | 80.1-9.1 | 67.6-9.3 | 74.8-9.3 |

[12] The DCF technique, used as a secondary or testing method by the Commission, indicates a 13.2% cost of common equity, which is essentially a composite of dividend yield and earnings growth. P.U.C. Order, dated August 17, 1978, Table II, p. 6:

reasoning for the 3.2% downward adjustment of cost figures. We have clearly held that when the fair rate of return falls below cost of capital, support must be found in the record. *See United States Steel Corp. v. Pennsylvania Public Utility Commission,* 37 Pa. Commonwealth Ct. 195, 226, 390 A.2d 849, 864 (1978). Recorded evidence would not seem to support the Commission's finding, but rather indicates a higher value figure.

However, the failure of the PUC's opinion to delineate the effect of these mathematical ratios to the corresponding derivation of common equity capital cost leaves us in the position of not being able to determine as a matter of law whether the PUC abused its discretion.

We must, therefore, remand this portion of the case for new and appropriate findings as to cost of common equity capital, which may be supported by the record and explained by its adjudication. *See Equitable Gas Co. v. Pennsylvania Public Utility Commission,* 45 Pa. Commonwealth Ct. 610, 618, 405 A.2d 1055, 1060 (1979).[13]

*Discounted Cash Flow*

|  | 1976 Dividend Yield % | 5 year average earnings per share growth % | DCF calculation % |
|---|---|---|---|
| York Water Company | 6.9 | 6.3 | 13.2 |
| 13 Water Companies | 8.4 | 6.4 | 14.8 |
| 6 Water Companies | 8.7 | 4.7 | 13.4 |

[13] In the recent past, the Commission has handled its fair value-fair rate of return adjudications in a rather perfunctory manner. In fact, this Court has found the necessity to remand more than twelve cases of this kind since September of 1977 for additional and more specific findings. We have been explicit in our reasoning of the present case with the hopes that the newly constituted Public Utility Commission will anticipate and prevent the remand problems which have confronted us in these rate controversies.

Accordingly, we

### ORDER

AND Now, this 28th day of April, 1980, the order of the Pennsylvania Public Utility Commission, dated August 17, 1978, is affirmed in part insofar as it concerns fair value; and the record is remanded in part to the Commission for a redetermination of the utility's fair rate of return and income available for return, consistent with this opinion to the end that its discussion, findings of fact, and conclusions of law are sufficient to enable this Court on review to determine the merits of an appeal, if taken, from such revised order.

President Judge BOWMAN and Judge DISALLE did not participate in the decision in this case.