ARMSTRONG COMMUNICATIONS,
INC., Petitioner,

v.

PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Respondent.

Citizens Telephone Company of
Kecksburg, Petitioner,

v.

Pennsylvania Public Utility
Commission, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2000.

Decided March 12, 2001.

Michael E. Lowenstein, Pittsburgh, for petitioner, Armstrong Communications, Inc.

Norman J. Kennard, Harrisburg, for petitioner, Citizens Telephone Company of Kecksburg.

Elizabeth H. Barnes, Harrisburg, for respondent.

Before DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, KELLEY, Judge, FLAHERTY, Judge.

COLINS, Judge.

In these two consolidated cases, Armstrong Communications, Inc. (Armstrong) and Citizens Telephone Company of Kecksburg (Citizens) have filed cross-petitions for review of an April 28, 1999 order of the Pennsylvania Public Utility Commission that found Citizens exempt under Section 251(f)(1)(A) of the Telecommunications Act[1] (Act) from interconnection obligations and granted Citizens a two-year suspension from these interconnection obligations. The Commission's Order further held that Armstrong was technically and financially fit to provide facilities-based and non-facilities-based competitive local exchange carrier (CLEC) services to within Citizens' territory. We affirm the Commission's decision and order.

Citizens is a rural incumbent local exchange carrier (LEC).[2] Its wholly owned subsidiary, Citizens Cable, provides cable television in the relevant telephone service territory that is the subject of Armstrong's instant CLEC Applications. Armstrong seeks authorization to provide CLEC services in the same geographic area where Citizens now serves as the LEC. Citizens opposes Armstrong's Application, and both entities dispute the interconnection obligations[3] under Section 251(f) of the Act. On May 1, 1998, the Commission consolidated Citizens' Section 251(f) interconnection obligation issues with Armstrong's CLEC Application proceedings.

The recommended decision of the Administrative Law Judges (ALJs) dated September 17, 1998 held that (1) Citizens is exempt from the interconnection obligations of the Act as a result of Section 251(f)(1)(A); (2) the provision of cable service by Citizens did not exclude it from the exemption provision of Section 251(f)(1)(C)

of the Act; (3) Citizens was entitled to a limited suspension of the interconnection obligations; and (4) Armstrong was unfit to be certified as a CLEC. Exceptions to the recommended decision were filed on October 7, 1998, by Citizens, Armstrong, the Office of Consumer Advocate, and the Pennsylvania Cable and Telecommunications Association. Reply exceptions were filed by Citizens and Armstrong.

On April 28, 1999, the Commission issued the Order that is the subject of this petition for review.[4] This order found that Citizens was exempt under Section 251(f)(1)(A) of the Act from the statutory obligation to provide Armstrong with certain Section 251(c) interconnection services and granted Citizens a suspension under Section 251(f)(2) of the Act through July 10, 2000. The order also granted Armstrong's applications to be approved as a facilities-based and non-facilities-based CLEC. This appeal followed.

It is well settled that the scope of judicial review in Commission cases is quite limited. In the absence of an error of law or violation of constitutional rights, an order of the Commission must be upheld if it is supported by substantial evidence. 2 Pa.C.S. § 704. *Peoples Natural Gas Company v. Pennsylvania Public Utility Commission*, 523 Pa. 370, 567 A.2d 642 (1989). An agency's interpretation should not be disregarded unless it is shown to be clearly erroneous. *Saia's Used Cars v. Commonwealth*, 142 Pa.Cmwlth. 27, 596 A.2d 1212 (1991). The Commission is charged with the responsibility of considering all relevant evidence, determining the weight of evidence, credibility of witnesses, and reliability of estimates and opinions. *York*

---

1. Telecommunications Act of 1996, Pub.L. 104–104, 110 Stat. 56, 47 U.S.C. § 151, et seq.

2. A rural carrier is defined by the Act as a local exchange carrier with less than 2% of the nation's total access lines installed. 47 U.S.C. § 251(f)(2).

3. Under the Act, states may no longer enforce laws that impede competition, and incumbent LECs are subject to a host of duties intended to facilitate market entry.

4. The Commission modified its order in one minor respect on April 30, 1999.

*Water Company .v. Pennsylvania Public Utility Commission,* 51 Pa.Cmwlth. 61, 414 A.2d 138 (1980).

■ We first address the issue of whether Citizens is exempt from interconnection duties as delineated in the Act. Under Section 251(c) of the Act, each LEC has specific statutory interconnection duties. However, Section 251(f) of the Act provides rural telephone companies, such as Citizens, with an exemption from the interconnection requirements of Section 251(c). Section 251(f)(1)(A) provides:

> Subsection (c) of this section shall not apply to a rural telephone company until (i) such company has received a bona fide request for interconnection, services, or network elements, and (ii) the State commission determines (under subparagraph (B)) that such request is not unduly economically burdensome, is technically feasible, and is consistent with section ·254 of this title (other than subsections (b)(7) and (c)(1)(D) thereof).

47 U.S.C. § 251(f)(1)(A). A limitation to this exemption is found in subparagraph (C), which states,

> The exemption provided by this paragraph shall not apply with respect to a request under subsection (c) of the section, from a cable operator providing video programming, and seeking to provide any telecommunications service, in the area in which the rural telephone company provides video programming. The limitation contained in this subparagraph shall not apply to a rural telephone company that is providing video programming on February 8, 1996.

47 U.S.C. § 251(f)(1)(C). Therefore, a rural telephone company that was also providing video programming on February 8, 1996 is grandfathered into the rural exemption under § 251(f)(1)(A). Conversely, a rural telephone company that did not provide video programming until after February 8, 1996 has no exemption.

The primary issue is whether the video programming activities undertaken by Cit-

izens were sufficient to qualify Citizens for the exception to the limitation. Specifically, the question is whether Citizens was providing video programming on February 8, 1996, the date of enactment of the Act. Neither party disputes the fact that Citizens turned on actual service to its first customer on May 10, 1996, approximately three months after implementation of the Act. Armstrong avers that Citizens is not entitled to be grandfathered in since the phrase "providing video programming" is limited to the actual physical delivery of programming to a customer prior to February 8, 1996. To the contrary, Citizens asserts that "provide" should include the taking of precautionary measures to make or procure for future use. As such, Citizens would qualify for the grandfathering exception to the Section 251(f)(1)(C) limitation. Thus, the issue focuses on the interpretation of the word "providing."

■ An administrative agency's interpretation of a statute for which it has enforcement responsibility is entitled to great deference and will not be reversed unless clearly erroneous. *Alpha Auto Sales v. Department of State, Bureau of Professional & Occupational Affairs,* 537 Pa. 353, 644 A.2d 153 (1994). Judicial deference is even more necessary when the statutory scheme is complex. *Graduate Health Systems, Inc. v. Pennsylvania Insurance Department,* 674 A.2d 367 (Pa. Cmwlth.1996); *Nationwide Mutual Insurance Co. v. Foster,* 143 Pa.Cmwlth. 433, 599 A.2d 267 (1991); *SmithKline Beckman Corp. v. Commonwealth,* 85 Pa.Cmwlth. 437, 482 A.2d 1344 (1984), *affirmed,* 508 Pa. 359, 498 A.2d 374 (1985). Hence, the proper place to ·begin the appropriate inquiry is with due deference to the views of the regulatory agency directly involved in administering the statute in question. *Alpha Auto Sales.* After a thorough review of the evidence, we conclude that the record as well as the Act support a finding that Citizens was "providing" cable service on February 8, 1996. Moreover, the Commission's interpretation of Section

251(f)(1)(C) is reasonable, is not clearly erroneous, and therefore should be sustained.

The Commission's decision, which accepted the ALJ's recommendation, is supported by the fact that Citizens had completed every regulatory hurdle and that the minor implementation processes necessary to delivering a service does not mean that Citizens was not "providing" services sufficient to lose its Section 251(f)(1) exemption under Section 251(f)(1)(C).[5] By February 8, 1996, Citizens invested $850,000 in cable system construction, received video-programming signals to its cable head-end, and engaged in advertising campaigns offering cable service to customers within Citizens' telephone service area. Although Citizens turned on actual service to its first customer on May 10, 1996, approximately three months after implementation of the Act, Citizens could have physically connected its first subscriber to its cable system before February 8, 1996. Upon review of the record, we find that the Commission's interpretation of this statute is supported by substantial evidence and should be given due deference. Thus, Citizens did not forfeit its exemption by virtue of its video programming activities.

▪ Armstrong next contends that the Commission erred in failing to terminate the rural exemption of Section 251(f)(1)(A) of the Act upon receipt of Armstrong's request under Section 251(f)(1)(B). Sections 251(f)(1)(A) and (B) allow the Commission to make a determination whether to terminate the exemption of a rural telephone company from Section 251(c) interconnection requirements. Section 251(f)(1)(B) of the Act provides:

> The party making a bona fide request of a rural telephone company for interconnection, services, or network elements shall submit a notice of its request to the State commission. The State commission shall conduct an inquiry for the purpose of determining whether to terminate the exemption under subparagraph (A). Within 120 days after the State commission receives notice of the request, the State commission shall terminate the exemption if the request is not unduly economically burdensome, is technically feasible, and is consistent with section 254 of this title ...

47 U.S.C. § 251(f)(1)(B). Armstrong asserts that the Commission's order does not address this issue and lacks an analysis concerning this section. Additionally, they contend that their interconnection request was not economically burdensome, technically infeasible, or contrary to universal service requirements.

Armstrong's argument is without merit. The Commission did hold hearings for the purpose of determining whether to grant an exemption under Section 251(f)(1)(A), and once it found an exemption appropriate, Armstrong's request was denied. In the April 28, 1999 Order, the Commission stated, "Interconnection is economically burdensome compared to Armstrong's apparent fitness and technical ability to deliver telecommunications over its distinctly independent cable network." Furthermore, substantial evidence supports the

---

**5.** This Court is aware of the Federal Communications Commission's (FCC) January 19, 2000 ruling that Section 214 authorization is not equivalent to "providing video programming" under Section 251(f)(1)(C). However, this ruling addresses only whether Section 214 authorization alone is equivalent to providing video programming. The FCC did not determine whether Citizens had, in fact, been providing video programming services on the date the Act became effective. The Commission, in its order of April 28, 1999, relied upon several findings of fact in its determina-

tion that Citizens was providing video programming. The Commission stated, "The record as well as TA–96, support a finding that Citizens was 'providing' cable service on the date of enactment of TA–96, i.e., February 8, 1996. That determination is underscored by the fact that Citizens had completed every regulatory hurdle incident to providing cable services as of February 8, 1996." (Commission Order, p. 23). Thus, the Commission took into consideration that Citizens had completed every regulatory hurdle, but this fact alone was not determinative.

Commission's decision on this issue. Citizens' witness testified that Armstrong's interconnection request would require Citizens to raise local rates leading to a loss of affordable rates for Citizens' customers. Thus, even though the Commission did not explicitly go through the Section 251(f)(1)(B) analysis denying Armstrong's request in its order, the Commission did determine that Armstrong's request was economically burdensome thereby addressing Armstrong's argument.

Lastly, Armstrong contends that the Commission failed to consider that Citizens had the burden of proof in the suspension proceedings and erroneously granted a blanket suspension. Armstrong asserts that the record is devoid of any proof that a suspension is necessary to avoid a general adverse economic impact on telecommunication users or that interconnection is unduly economically burdensome or technically infeasible.

Under Section 251(f)(2), the Commission may suspend or modify Section 251(b) and (c) interconnection requirements. In this section, Congress recognized that the market characteristics of rural areas and those served by smaller LECs require certain accommodations. Section 251(f)(2) specifically provides in pertinent part:

**(2) Suspensions and modifications for rural carriers**

A local exchange carrier with fewer than 2 percent of the Nation's subscriber lines installed in the aggregate nationwide may petition a State commission for a suspension or modification of the application of a requirement or requirements of subsection (b) or (c) of this section to telephone exchange service facilities specified in such petition. The State commission shall grant such petition to the extent that, and for such duration as, the State commission determines that such suspension or modification—

(A) is necessary—

(i) to avoid a significant adverse economic impact on users of telecommunications services generally;

(ii) to avoid imposing a requirement that is unduly economically burdensome; or

(iii) to avoid imposing a requirement that is technically not feasible; and

(B) is consistent with the public interest, convenience, and necessity.

47 U.S.C § 251(f)(2).

■ As stated previously, this Court should not substitute its judgment for that of the Commission when substantial evidence supports the Commission's decision within the Commission's expertise. *Pennsylvania Electric Company v. Pennsylvania Public Utility Commission*, 166 Pa. Cmwlth. 413, 648 A.2d 63 (1994), *affirmed*, 544 Pa. 475, 677 A.2d 831 (1996). We find that Citizens presented substantial evidence that a suspension was necessary to avoid a significant adverse economic impact on its customers and itself, and in turn, the Commission properly held that relief is necessary in order to avoid imposing an economically burdensome requirement. The Commission considered Citizens' loss of revenue due to discounted resale rates and the need for additional time to facilitate competition and network deployment because of resource constraints. While we agree with Armstrong that the Act's main objective is to facilitate a pro-competitive industry, the Act also recognizes that this process must be done cautiously as small carriers face competitive entry by larger companies with greater financial and technological resources. Therefore, grant of the two-year exemption was appropriate in facilitating a transition period for Citizens.

Citizens, in its cross-petition, argues the Commission misapplied the traditional test that it had previously adopted for a certificate of public convenience as a non-facilities-based CLEC, and cannot change the standards for issuance of a certificate without advance notice and public comment.

Citizens asserts that Armstrong's application to provide service within Citizens Telephone's service area should have been subject to the three-part analysis traditionally used by the Commission for § 1103 applications which would require (a) fitness of Armstrong to provide the proposed service; (b) adequacy of Citizens' existing telephone service; and (c) public need for Armstrong's proposed service. Citizens avers that the Commission did not do the above but, rather reviewed only fitness and ignored the other traditional public interest standards. They contend that Armstrong failed to meet the "traditional standards" and was not entitled to obtain certification.

We disagree. The Commission properly granted its application authorizing Armstrong to engage in non-facilities-based competition. Congress explicitly recognized that competition between local telephone companies and cable companies is in the public interest. The standards the Commission used to examine Armstrong's Applications were wholly consistent with the approach the Commission had outlined in its tentative decision which was adopted in the Implementation Order of June 3, 1996. The Commission's tentative decision stated:

> Pursuant to the broad language of Section 253(a) of the Act, it appears that the Commission is prohibited from restricting the entry or preventing the continued operations of a telecommunications service provider whether or not the Commission finds the provision of services by the carrier to be in the public interest. Accordingly, it appears that the legal basis underlying the issuance and maintenance of all telecommunications certificates of public convenience, the public interest finding has been preempted by the Act . . .

*In re: Implementation Order of the Telecommunications Act of 1996*, Order entered June 3, 1996 Docket No. M–00960799 (Implementation order).

■ The Commission held in agreement with Armstrong's argument, that the test for entry into an LEC's service territory eliminates the requirement that an applicant demonstrate the public need for the proposed service. This view is consistent with the implementation order cited above as well as the intent of the Act to promote competition. Accordingly, Armstrong was not required to establish a localized need for competition in the service area, and a review of the record establishes that Armstrong is technically and financially fit to provide the service.

■ Citizens next contends that the Commission erred when it held that its rural exemption was of a limited term and that it would automatically terminate on July 10, 2000 (with the opportunity for two (2) one-year extensions) to run concurrently with the Section 251(f)(2) suspension. They contend that the drafters of Section 251(1)(A), in designing the exemption, contemplated that the exemption should remain in place until a request is made and a record is developed to support dissolution of the exemption.

We disagree. The Commission was within its power to rule that the exemption was not perpetual and to set a timetable for its removal. The Commission concluded that a two-year suspension struck an appropriate balance accommodating the needs of Citizens, a rural LEC, for time to facilitate competition with its competitors for access to rural Pennsylvania competitors. Thus, the Commission properly held that Citizens qualifies for the same limited suspension and modification of its obligations under Section 251(f)(2) that the Commission provided to other rural telephone companies in its July 1997 Order. The two-year suspension is temporary insulation from competition, and we emphasize that Citizens should use the suspension period to prepare for future competition in keeping with the Act's ultimate goal of promoting competition.

Accordingly, we affirm the April 28, 1999 order of the Pennsylvania Public Utility Commission.

## ORDER

AND NOW, this 12th day of March 2001, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.